### John C. Patterson v. The Northern Trust Company et al.

#### Gen. No. 12,420.

1. TECHNICAL OBJECTIONS—*when will not reverse.* Technical objections will be unavailing if it is clear that no right has been denied and no interest in the subject-matter of the litigation has been prejudicially affected.

2. ATTORNEY AND CLIENT—*when authority of former presumed.* The authority of the attorney of record to institute and prosecute a suit on behalf of his purported client will be presumed in the absence of a contrary showing.

3. RECEIVER—*when objection to personnel of, comes too late.* An objection to the personnel of a receiver comes too late when not made at the time of appointment and not interposed for upwards of three years thereafter.

4. RECEIVER—*what interest does not disqualify.* The fact that a receiver prior to his appointment as such was acting with respect to the subject-matter of the trust as a trustee, does not disqualify him as receiver.

Patterson v. The Northern Trust Co.

5. RECEIVER—*right to discharge of, upon payment of debt.* Where a receiver is appointed in a proceeding to enforce a lien for rent, it is proper to discharge such receiver upon the payment of the debt which forms the basis of the lien so sought to be enforced.

6. FINDINGS OF FACT—*effect of, in absence of certificate of evidence.* The findings of fact contained in a decree are, in the absence of any certificate of evidence, conclusive.

7. NOTICE—*what sufficient, of application to court.* Where a party is represented by a solicitor of record, notice to him in person is not essential to the entry of an order made pursuant to motion, notice to his solicitor being sufficient.

8. ESTOPPEL—*when arises to preclude denying of corporate existence.* A party is estopped to deny the corporate existence of an institution which he has dealt with as a corporation, recognizing it as such.

9. FORFEITURE—*when, of lease, would be unwarranted.* An attempt to declare forfeiture of a lease and thus acquire title to land and valuable buildings thereon for the non-payment of several instalments of rent, would be unwarranted where a simple proceeding to enforce a lien for rent would supply a complete remedy.

Bill to foreclose landlord's lien. Error to the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed April 4, 1907.

JOHN C. PATTERSON, for plaintiff in error.

JUDAH, WILLARD & WOLF, HERRICK, ALLEN, BOYESEN & MARTIN, and OLIVER & MECARTNEY, for defendants in error.

MR. JUSTICE HOLDOM delivered the opinion of the court.

In the litigation projected by the filing of the bill in the record here brought for review, in which bill John C. Patterson is one of the complainants, varied rights and interests are involved, among others a fee simple title, a mortgage claim, beneficiaries under a trust conveyance, and distributees under a decree for the payment of a large sum of money. With the dis-

position of the cause and the many orders entered, every interest affected and all the parties concerned, save plaintiff in error, John C. Patterson, seem content. He alone makes evident his dissatisfaction by invoking this review of the record made by the learned and experienced chancellor who heard the cause in the court below. John C. Patterson assigns upon the record the following alleged errors:

"1. The court below erred in entering the order on the 24th day of June, 1902, appointing the Northern Trust Company, trustee, complainant in said cause, receiver in said cause.

"2. The court below erred in entering the decree in said cause on the 25th day of June, 1902.

"3. The court below erred in entering the order on the 21st day of February, 1905, on petition of Edward A. Shedd and Albert M. Johnson.

"4. The court below erred in entering the order on the 20th day of March, 1905, denying the motion of John C. Patterson to vacate the order of the court below, entered on the 21st day of February, 1905, on petition of Edward A. Shedd and Albert M. Johnson.

"5. The court below erred in entering the order and decree of May 2, 1905, overruling objections to the sixth, seventh, eighth, ninth, tenth and final accounts of the receiver herein and approving said accounts."

Briefly stated the facts pertinent to an understanding of the questions involved are as follows:

George M. Pullman and Watson Matthews, as trustees, on May 1, 1893, executed to Herman H. Kohlsaat a lease for a term of 102 years, at adequate rentals duly reserved, of the property locally known as the "Stewart Building," situate at the northwest corner of State and Washington streets, Chicago. The building at the time of the making of the lease, in pursuance of its terms, was razed, and in its place and upon its site there was erected the present modern twelve-story office and store structure. After the making of the Kohlsaat lease, and subject to it, Pullman and Mat-

thews conveyed to the beneficiaries under the trust, for which as trustees they held title to the fee of the property, the latter of whom, including plaintiff in error John C. Patterson, on December 20, 1897, conveyed the fee title to the defendant in error, The Northern Trust Company, to be holden by it upon certain trusts in that conveyance expressed. Kohlsaat, with the assent of the lessors, prior to May 1, 1897, assigned his leasehold interest to the Merrimac Building Company. On July 1, 1896, the Merrimac Building Company made and delivered a trust deed conveying its leasehold interest in the land and the Stewart building situate thereon to the Illinois Trust & Savings Bank to secure an issue of bonds aggregating $400,000.

On August 7, 1900, the Northern Trust Company, as trustee, and the *cestuis que trust*, including John C. Patterson, the plaintiff in error, filed the bill found in this record to foreclose a landlord's lien, claiming that rent remained due and unpaid, aggregating the sum of $140,000. The Merrimac Building Company and all those claiming any interest under it, by way of mortgage, bond holders, or otherwise, were made parties defendant, so that all parties, from fee owners to the remotest underlying claimant, were brought within the operative jurisdiction of the court, so as to be bound by the proceedings so far as such proceedings might be free from reversible error.

The filing of the bill was followed by appearance of all the defendants by a reputable array of counsel, and answers meeting the averments of the bill were filed, to which the complainants joined issue by the usual formal replication in chancery.

On June 25, 1902, upon the report of the court's master to whom the cause had previously been referred to take proofs, all parties in interest being before the court and represented by counsel, a decree was entered establishing the lien and finding the amount due to be $199,359, and ordering the lease-

hold estate sold unless the amount so found due was paid on or before March 15, 1904.

The receivership of the Northern Trust Company, who had before the entry of the decree and on June 24, 1902, in accordance with the prayer of the bill, and with the consent of all the parties, been appointed receiver, was continued until the confirmation of a sale to be made under the decree, or until payment. On the happening of either contingency the receiver was directed to be discharged. The decree further provided for payment of the ground rent and the running expenses of the building, and that the receiver file quarterly accounts. There were two findings of agreements between the parties; one on the part of complainants that no sale should be made of the leasehold interest under the decree until March 15, 1904, and the other on the part of the defendants that they would not take any proceedings to reverse the decree. No steps having theretofore been taken under the decree, looking to a sale of the leasehold, on February 21, 1905, two of the defendants, Edward A. Shedd and Albert M. Johnson, large holders of the mortgage bonds of the Merrimac Building Company, petitioned the court for leave to pay the amount then due under the decree, amounting to $210,487.20. An order was entered as prayed, and the parties having made good their offer by paying the sum of $210,487.20 then due under the decree to the receiver, possession was ordered to be delivered by the receiver to the Merrimac Building Company, which was done, and the court retained further jurisdiction for the purpose only of settling the receiver's accounts. To this stage of the controversy, it will be noticed, none of the parties, at any of the various steps taken, interposed any opposition or objection.

On February 25, 1905, plaintiff in error filed a motion to vacate the order of February 21, 1905, authorizing the acceptance of the amount due under the decree and the surrender of possession by the receiver

to the Merrimac Building Company on receipt of the amount. Neither affidavits nor reasons in writing were filed in support of the motion. The record, however, discloses a colloquy between the several counsel and the court, from which we gather that the sole point relied upon consisted in the fact that no written notice had been given John C. Patterson of the intention to apply for the order of February 21, 1905. That such a notice should have been given it is insisted is imperative by the rules of court.

To the receiver's final account filed March 29, 1905, plaintiff in error interposed objections. Two of the accounts objected to, together with the objections, were referred to a master of the court, but on May 2, 1905, the order of reference was vacated, the objections overruled by the chancellor, and the accounts approved without prejudice to the rights of the objector, John C. Patterson, to a suit then pending against the Northern Trust Company, or to any other suit he might wish to thereafter institute against it as trustee under the deed of trust of date December 20, 1897. The only objection appearing from the record to have been made by plaintiff in error to the entry of the latter order is the non-repetition of the words "without prejudice" in several places indicated by him.

It is an elementary axiom of the law that courts do not concern themselves with moot questions, nor with fanciful technical objection to legal procedure, for however correct the contention may be as to lack of precision in legal form, such technical objection will be unavailing if it is clear that no right has been denied the objector and no interest in the subject-matter of the complaint affected to his detriment. Or, in other words, that if the record shows that exact justice has been done by the trial court, and that the complaining party has received all he is entitled to receive or claims, and that every property and personal right has been accorded to him in the subject-matter of the litigation, neither decree nor judgment

will be reversed for an immaterial inexactness in the form either of the procedure or judgment. Courts are primarily maintained for the attainment and enforcement of justice; when that has been legally accomplished in any case, the function of the court has been fully performed and law and legal procedure satisfied. Technical matters of procedure are no concern of courts of review when it is patent that every claimed right has been accorded the objector.

John C. Patterson, the plaintiff in error, has a one-twelfth interest in the income of the "Stewart property" during his lifetime, as the surviving husband of his deceased wife. The issue of the marriage, Stewart Patterson, being vested with a one-fourth interest, subject to his father's life estate in one-third of it. Stewart Patterson is of age, *sui juris*, laboring under no disability, a defendant in error, in form at least arrayed against his father. Stewart Patterson makes no complaint here. Plaintiff in error's rights in the Stewart property rest on that of his son. John C. Patterson seems to be arrayed against himself. Can he survive the Scriptural test that a house divided against itself must fall?

John C. Patterson, as already appears, is one of the complainants in the bill in this record. The record shows that the bill was signed in his name by the law firm of Dupee, Judah, Willard & Wolf, with Mr. John P. Wilson on the bill as counsel. Nowhere in this record does plaintiff in error repudiate his counsel's right to appear for him, or their conduct in anything which they did while so acting. They are well known, active, reputable practitioners at this bar, of long standing, and it will be assumed that all they did in behalf of their client was in accord with their retainer and his best interests.

The order appointing the Northern Trust Company receiver was made upon the application of the complainants in the bill, plaintiff in error being one. No objection to such appointment was interposed by any

Patterson v. The Northern Trust Co.

of the parties in interest; no motion made at any time before the chancellor to rescind the order for any reason or for any purpose. Plaintiff in error is concluded by that order and cannot now, after having ratified it by his acquiescence in it, after the lapse of more than three years be permitted to challenge it. The order was made in furtherance of the protection of the interests of all the complainants, including plaintiff in error. If there was any ethical reason why the Trust Company should not have been appointed, the time to urge it has passed. At the time of the appointment nearly $200,000 of rent remained due the complainants, under the covenants of the lease, from the lessees. Without the intervention of a receiver the lessees would be in possession of the demised premises, receiving the income therefrom. The duty imposed upon the Trust Company in virtue of the trust conveyance by which it held title, was to conserve the rights and interests of the beneficial complainants. We see nothing inconsistent in the dual relation of trustee and receiver with which the Trust Company was invested by this order. It was, in both capacities, conserving and protecting the beneficial interests. Nothing appears in this record to cast any suspicion upon either its ability or disposition to amply care for and protect such interests, and naught appears from its actions or conduct, either prior to or subsequent to the receivership appointment, from which any inference may be drawn that the trusts confided to it were not conserved in the furtherance and protection of the interests of all the beneficiaries. No duties were thereby assumed adverse to such interests. Conflict was, in fact, thereby avoided, and harmony made possible. The receiver has performed the functions of its office; its accounts have been made and approved. Plaintiff in error has received from the Trust Company all that was due him. He is barred from now being heard to complain. He could reap no material

advantage were his objection to the appointment entertained. Like futile are his objections to the entry of the decree finding the amount due and establishing the landlord's lien. The full measure of the rights of plaintiff in error, as disclosed by the bill, were accorded him in the entry of the decree. Every advantage flowing from the decree to him and his co-complainants thereafter was carefully safeguarded by its provisions and directions. He cannot now undo that which he caused to be done, nor disturb the rights of others accruing in the faith of the verity of the decree entered with his connivance and consent. Moreover, there are findings of fact in the decree sufficient to support it. These findings, in the absence of any certificate of evidence, are conclusive, and against which plaintiff in error's objection is impotent to prevail. Brown v. Miner, 128 Ill. 148; King v. King, 215 Ill. 100.

We now come to the first instance in which any objection to the proceedings before the chancellor was made by any party in interest, which is the motion of plaintiff in error to vacate the order of February 21, 1905, allowing Shedd and Johnson to satisfy the decree by paying the full amount due thereon. It was without doubt within the power of complainants below, after March 15, 1904, to have taken steps to compel payment of the amount then due, or force a sale of the Stewart Building and leasehold to satisfy the amount due under the decree. No such proceedings were taken. Plaintiff in error made no attempt to enforce such right himself, nor did he request the Trust Company so to do. In this condition, Shedd and Johnson, defendants to the bill and large holders of the mortgage indebtedness created by the Merrimac Building Company, applied to the chancellor for an order permitting them to pay the amount due under the decree, together with all lawful charges accrued since its entry, and to have the decree satisfied and the receiver directed to surrender possession to the

Merrimac Building Company. The application was heeded, the order entered, the amount then due under the decree paid in open court, the decree satisfied, and possession delivered by the receiver to the Merrimac Building Company. There is no contention but that all the money due and collectible under the decree was paid. But plaintiff in error says it was done without notice to him, as required by the rules of court. In this he is in error. He was represented by counsel, who stood unchallenged before the court as his legal representative in that cause. Notice to suitors is never required where they are represented by counsel. Besides, in the then condition of the cause the chancellor had no other alternative than to allow payment of the amount due under the decree, and payment being made and the decree satisfied, the Merrimac Building Company was entitled to possession without an order of the court. Any protest of plaintiff in error, or any one else, to the entry of such an order would have been abortive to prevent it. It was a substantive legal right, which could not have been denied. As said in Jones on Mtgs., sec. 1537, "It is the right of a mortgagor whose property has been placed in the hands of a receiver, pending a suit to foreclose, to pay the debt at any time and have the property restored to his possession. The right does not depend upon the discretion of the court, but is one that he can claim, and the court cannot withhold it." The right to make the payment needed no order to support it. It was a right which could not be denied. The order gave that right no additional force. Its request was discretionary with the interested party. To annul it now would not detract in any manner from the right to pay or to have the decree satisfied of record and possession of the property delivered by the receiver.

The motion to set aside the order of February 21, 1905, was unsupported, except by irrelevant statements of counsel for the motion. We think the criti-

cism of the late Judge Tuley, before whom the motion was made, and which we find in a so-called certificate of evidence, most apt. He said: "You come here without facts, simply on motion, without any affidavit and without any proof as to what was done at the time the motion was made. You say you did not have notice, but you do not even swear to that." This sufficiently disposes of that objection.

There is neither force nor merit in the objection to the order of May 2, 1905, approving the receiver's accounts. John C. Patterson was not concerned in any manner with any charge or disbursement to which he filed his objections. The full amount of the decree was paid; to that amount his interest was limited. No payment made by or compensation retained by the receiver affected plaintiff in error. With these he had no concern. Whether right or wrong, proper or improper, reasonable or unreasonable, they had no effect upon his rights. No part of such charges were paid by him. His full measure of financial interest had been satisfied upon the payment of the full amount of the decree, after which the subsequent proceedings interested him no more. He had no right to be heard on his objections in the trial court, and it is clear the action of the court on them cannot be disturbed on review.

The insistence that the words "without prejudice" should have been iterated in other parts of the order, is finical and pointless. The order as drawn clearly preserves to plaintiff in error any right or claim he has in any pending suit or any suit he may hereafter see fit to inflict upon the Northern Trust Company, and the order as entered neither prejudices nor bars him from any claim he may have against the Northern Trust Company.

An examination of the briefs of plaintiff in error, written by himself, fails to disclose any fact or legal principle impeaching in any manner the orders or judgments of the Circuit Court.

The attack made upon the legality of the incorporation of the Merrimac Building Company and its power to hold title to real estate are neither involved nor made pertinent by any averment or statement in the bill, nor could they be injected into a bill of the nature of the one in the record. Twice has the Merrimac Building Company been recognized by plaintiff in error as a corporation, and its right as such to hold the title to the Stewart Building unchallenged; first, when the assignment of the Kohlsaat lease was made to it and, second, when the bill here was filed against it seeking to enforce a lien under the covenants of the Kohlsaat lease. If the company were otherwise open to the attack made, so far as plaintiff in error is concerned the doctrine of estoppel would be a complete defense.

However, we gather from the Patterson briefs that the Northern Trust Company has been slothful in the management of the trusts vested in it by the deed of trust from the beneficial owners of the Stewart property, because it was not swift to declare a forfeiture of the lease under its terms for non-payment of instalments of rent, and regain possession of the land with the $600,000 building erected thereon, and thus terminate the title and interest of the Merrimac Building Company. Such action on the part of the Trust Company would have been unwarranted and abhorent to the principles of equity. The security was ample, the lien for unpaid rent enforceable. A proceeding in equity to enforce that lien was the orderly and approved method. Had the Trust Company proceeded in an attempt to enforce a forfeiture, it is very doubtful if possession of the Stewart Building could have been obtained without the interposition of the strong arm of a court of equity, and in such a proceeding a tender of the amount due would have barred the forfeiture sought, for forfeitures are not favored by courts of equity.

A forfeiture is defined as a punishment annexed by

law to some illegal act or negligence in the owner of lands, tenements, etc., whereby he loses all his interest therein and they become vested in the party injured as a recompense for the wrong which he alone hath sustained. 2 Black. Com. 267.

Simple default in the payment of several instalments of rent, contrary to the covenant of the demise, was no such wrong justifying a forfeiture, when payment of the full amount due operated to restore the *statu quo* and made the aggrieved party whole.

As was said in Douglas v. Union Mutual Life, 127 Ill. 101: "No rule is better settled than that a court of equity will not lend its aid to enforce a forfeiture because of a breach of a condition subsequent in a deed. 2 Story's Eq. Jur., sec. 1319; 4 Kent's Com. (8th ed.), 134; Freeman's Notes to Cross v. Carson, 44 Am. Dec. 757."

There is no error in this record affecting the rights of plaintiff in error. He has received all to which he is entitled. The decree of the Circuit Court is affirmed.

*Affirmed.*