## In re LINDY-FRIEDMAN CLOTHING CO., Inc.

(District Court, N. D. Alabama, S. D.  August 17, 1921.)

1. **Landlord and tenant ⟜47—Intention of grantor governs in construction of lease.**

   Whether a particular provision of a lease amounts to a condition or not, the rule is that the intention of the grantor governs, and such intention is to be gathered from the whole instrument and the existing facts.

2. **Landlord and tenant ⟜76(1)—Restrictions in lease against subletting valid.**

   In a lease for a term of years, restrictions against assignment or subletting are valid.

3. **Landlord and tenant ⟜77—Verbal transfer of lease held not effective against landlord.**

   Where a lease of a building for a term of years contained a provision against assignment or subletting without consent of the lessors, but recited that lessees intended forming a corporation to conduct business in the premises, and provided that they should have the right to transfer and assign the lease to such corporation on a form attached, to be signed by both assignee and lessors, by which the assignee took subject to all obligations of the original lease.  The taking of possession by the corporation from the lessees without the execution of such instrument or the knowledge of any transfer by the lessors *held* not effective to transfer title to the lease to the corporation.

4. **Landlord and tenant ⟜76(3)—Provision in lease requiring formal execution of transfer held not waived.**

   Provision of a lease, requiring any assignment to be executed on a form attached and signed by assignee and lessors, *held* not waived by the lessors, in the absence of clear proof that they had actual knowledge of an informal transfer by lessees.

5. **Landlord and tenant ⟜101½—Provision in lease for forfeiture in case of bankruptcy of lessees held to apply to corporation assignee.**

   A provision of a lease, giving lessors the right to re-enter in case of bankruptcy of lessees, *held* to apply to a corporation which the lease provided might become assignee, and which went into possession and became assignee in fact as between it and the lessees.

6. **Bankruptcy ⟜255—Trustee should not assume lease which will delay settlement of estate.**

   It is not in accordance with the settled policy of requiring prompt settlement of bankrupt estates to authorize a trustee to take over a lease of a large business building held by the bankrupt and having over five years to run.

In Bankruptcy.  In the matter of Lindy-Friedman Clothing Company, Inc., bankrupt.  On petition to review order of referee.  Vacated.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, Ala., and Steiner, Crum & Weil, of Montgomery, Ala., for petitioners.

Tillman, Bradley & Baldwin and Ritter & Winn, all of Birmingham, Ala., for trustee.

CLAYTON, District Judge.  This matter is before me on the petition of S. L. Tyson and N. W. Tyson as landlords, for review of the order of the referee in bankruptcy of June 10, 1921, decreeing:

"First.  That the trustee in bankruptcy in the above-entitled matter is entitled to the possession of the premises and the ownership of the leasehold

constituted by that certain lease entered into under date of the 21st day of June, 1919, by and between S. L. and N. W. Tyson through their duly authorized agents, Molton Realty Company, as landlords, and Samuel Friedman and Sol Lindy, as lessees.

"Second. That said S. L. and N. W. Tyson and their agents are hereby enjoined from in any wise interfering with the possession of said leased premises by the trustee in bankruptcy herein or by his tenants, subtenants, assignees or transferees during the full period of the term of said lease, that is to say, to the expiration of said term on the 30th day of September, 1926."

The questions at issue have been fully argued, and I have given them due consideration. I have carefully examined the opinion of the referee. It reflects much learning, and is proof of his ability and industry; but in my opinion he had an incorrect conception of what the lease contract really is—what rights of the landlord were granted away and what were reserved; what rights the lessees became possessed of and what they were compelled to do to enable them to continue to enjoy the contract or to empower any third party to take their place in its enjoyment. I am constrained, therefore, to disagree to the referee's interpretation of the lease contract or to his conclusion, and cannot adopt his reasoning so excellently phrased.

The questions presented arise out of the lease contract entered into by S. L. Tyson and N. W. Tyson on one part and Samuel Friedman and Sol Lindy on the other, on June 21, 1919; and these questions must be determined by the ascertainment of what the parties really intended by the stipulations and agreements contained in the instrument. The leased premises is a five-story brick and concrete building occupied as department store, and the lease term was for seven years, ending September 30, 1926. Among the provisions of the contract important to be considered are the following:

"Should the lessee fail to pay the rents as they fall due as aforesaid, or violate any of the other conditions of this lease, the lessors shall have the right, at their option, to re-enter the said premises and annul this lease. Such re-entry shall not bar the recovery of rent or damages for breach of covenant, nor shall the receipt of rent after condition broken be deemed a waiver or forfeiture."

"The lessee agrees, * * * not to assign this lease, nor underlease or let said premises, or any part or interest therein, without the written consent of the lessor, hereon indorsed. * * * If an execution or other process be levied upon the interest of the lessee in this lease, or if a petition in bankruptcy be filed by or against the lessee in any court of competent jurisdiction, the lessor shall have the right, at his option, to re-enter said premises and annul this lease."

The foregoing excerpts are taken from the printed portion of the lease. In the typewritten portion are the following stipulations:

"It is distinctly understood and agreed that the lessees will do such repairs and improvements upon said building as may be necessary to keep the same in a neat and tenantable condition during the entire term of this lease."

Then follows a statement as to the nature of certain repairs that the lessees may make to suit their convenience.

"The lessees shall have the right to sublet any part of said building that they may wish to sublet, but such subletting shall be in all respects subject

to this lease, and subject to printed form hereto attached marked 'Exhibit A.' These forms to be executed also by subtenant."

"It is contemplated by the lessees herein to organize a corporation with not less than $20,000.00 paid-up capital, and it is agreed that when said corporation is organized the lessees shall have the right to transfer, assign this lease and sublet the property described to such corporation. The form to be used in the transfer and subletting shall be the same as the form hereto attached marked 'Exhibit A.'"

Attached to the lease as "Exhibit A" is what is called "Transfer of Lease Contract," as follows:

"For value received the lease contract hereto attached, by and between ———— as lessor, and ————, as lessee, is hereby transferred, assigned and conveyed by ———— to ———— and the property described in said lease contract is hereby sublet by ———— to ————; and in consideration thereof the said ———— hereby agrees to pay the rent due or to become due under the terms of said contract to ————, and further assumes all other obligations of the original lessee to the original lessor.

"The undersigned ———— hereby consents to the above transfer, assignment and subletting, but in giving his consent does not in any wise change or modify said contract or release the original lessee from any obligation to the original lessor."

It is very evident that by this instrument the parties contemplated the creation of written contractual obligations between them, which should be observed even in the case of another party desiring to become sublessee. The signatures of both parties thereto were required; and when the contract was executed they of course became bound by the terms and stipulations thereof. The instrument does not appear to have been skillfully drawn, or with any particular reference to a technical meaning or application of its terms.

Throughout the lease the landlords are called "lessors," while the tenants are called "lessees." Friedman and Lindy occupied the premises for a brief period, and then, as contemplated by the provision quoted from the lease, organized the corporation, which entered and occupied the premises for the period from about September, 1919, to June, 1920, and then became bankrupt, and its estate is now being administered by this court. John S. Coxe was appointed receiver, and subsequently, in the latter part of June, 1920, made trustee of the estate.

In February, 1920, a part of the leased premises was sublet by Lindy-Friedman Clothing Company, Inc., to Augusta Friedman, and a certain other part in April of that year was sublet by the corporation to the Gulf States Supply Company. On June 30, and July 5, 1920, the lessors, S. L. Tyson and N. W. Tyson, gave notice in writing to the original lessees, the subtenants, the bankrupt and the trustee, that they elected to exercise their option to re-enter the said premises, and made demand for the surrender thereof, assigning no particular reason. On May 18, 1921, the trustee in bankruptcy filed his petition, setting out substantially the foregoing facts, and praying for an order to the effect that the trustee is entitled to possession and ownership of the leased premises, and to have the lease performed by the lessors in favor of the trustee for its unexpired term. Upon the hearing of this petition, the facts were substantially without dispute.

[1] It is useless to expand this opinion with a discussion of the

technical distinction between a "covenant" and a "condition" with respect to the lease in question; for, after all, whether a particular provision amounts to a condition or not, the rule is that the intention of the grantor governs, and such intention is to be gathered from the whole instrument and the existing facts. Frank v. Stratford-Handcock, 13 Wyo. 37, 77 Pac. 134, 67 L. R. A. 571, 110 Am. St. Rep. 963. No precise or technical words are required in a deed to create a condition precedent or subsequent. The intention of the party to the instrument, when clearly ascertained, is of controlling efficacy. Elyton Land Co. v. S. & N. A. R. Co., 100 Ala. 396, 14 South. 207.

Undoubtedly, the landlords had fundamental rights, which if not granted away by them, cannot now be taken from them by a court; and it is clear to my mind that the intention was to preserve and not to surrender certain of these rights. It is specially stipulated in the printed portion of the lease that the property should not be sublet without the consent of the landlord, but subsequently provided that the lessees should have the right to sublet any part of the premises; however, this modification of the restrictions as to subletting took care to say that "such subletting shall be in all respects subject to this lease and subject to printed form hereto attached marked 'Exhibit A.' These forms to be executed also by any subtenant." The exhibit part of the contract and the prescribed form are hereinbefore set out. Neither Augusta Friedman nor the Gulf States Supply Company, who were claimed in the argument in behalf of the trustee to be sublessees, executed contracts according to the terms of the lease and in the forms provided, or any other written form to which the lessors were a party; and according to the testimony in behalf of the lessors, which I believe to be true, they, the Tysons, had no notice of such subletting until subsequent to the bankruptcy of the Lindy-Friedman Clothing Co., Inc.

The lessors gave timely notice of their election to terminate the original lease, and they now insist that these subleases were made in disregard of their rights expressly reserved to them in their contract or lease, made by them as the owners of the building. Certainly, the landlords had the right to know who their tenants were; and it was well within their lawful authority to require as a condition or term of their contract that sublessees, desiring to occupy the premises or any part thereof, should become bound by written contract obligations such as was stipulated in the instrument of lease—a condition which cannot be subtracted at the pleasure of the original lessees. Therefore, when such lessees undertook to sublease parts of the property, thereby letting strangers to the original contract into possession without complying with the stipulations of their lease contract, the terms of the same were violated, and the other party thereto, the Tysons, became entitled at their option to put an end to the lease and to take possession of their property.

[2] It is a sound proposition and applicable to this lease that, it being for a term of years, restrictions against assignments without the consent of the lessor are valid, for various reasons, among them that

a lessor has the right to exercise his judgment with respect to the persons to whom he trusts the management or custody of his premises. Naturally he does not want undesirable tenants, those who may use his property for unlawful purposes, or those whom he may consider financially irresponsible. This doctrine, I think, is upheld by the cases cited in 16 R. C. L. §§ 326–645.

[3] The lease was not formally assigned to the corporation, now the bankrupt here, nor was there any written evidence of the assignment. The trustee insists, however, that there was a verbal assignment, and that the original lessees let the corporation into possession of the premises, and that thereafter the corporation paid the rent. It is a familiar rule that in construing an instrument if a seemingly conflicting provision can be reconciled with the others so as to afford a field of operations for all, then all the provisions must be allowed to stand. It appears to me that the stipulation for the acquirement of the lease by the corporation is not in such hostility to the other or general provisions of the contract relating to subleasing as to destroy the necessity for a formal contract by any subtenant, even the corporation. I am therefore of opinion that the bankrupt did not, prior to the bankruptcy, acquire title to the lease as against the landlords, because the lease was never assigned to the bankrupt, nor was a formal contract of lease entered into by the bankrupt and the landlords.

However, it is insisted that there was a waiver on the part of the lessors of the provision of the lease requiring formal contract from a sublessee. It is significant that the lessees and the bankrupt corporation apparently studiously refrained from taking any definite steps to vest in the corporation the legal title to the lease. This appears to me to have been a deliberate and intentional failure on the part of Lindy and Friedman and the bankrupt to comply with the terms of the original lease, so that either of them would be in a position to claim ownership of the lease as possible exigencies might seem to demand. It is true that a number of checks of the bankrupt were accepted in payment of rent. But it is also true that the lessors through their agents did not receipt the bankrupt for this rent, but receipted the original lessees in each case of payment, and that the account was kept all the time by the lessors' agent in the name of the original lessees. There was never any act of any kind by the lessors or their agent which could be construed as a recognition of the assignment of the lease. On the contrary, the conduct of the lessors and their agent is convincing that the lessors at all times considered the original lessees as the parties who were under the contractual relations of lessees and obligated to pay the rent.

[4] If it be argued that the acceptance of checks of the corporation was evidence of knowledge on the part of the lessors of the alleged assignment of the lease and of their acquiescence therein, I think the answer is that it is not enough that the lessors might upon inquiry have discovered the fact of assignment. There must be actual knowledge of the fact, and unless the evidence is so cogent and sufficient as to warrant the inference that there was such knowledge, there is no

consent or waiver. German-American Savings Bank v. Gollmer, 155 Cal. 683, 102 Pac. 932, 24 L. R. A. (N. S.) 1066. In this case the evidence failed to carry to the lessors or their agents knowledge or notice of the assignment; and, on the other hand, the evidence convinces me that the landlord had no such knowledge or notice. Emery v. Hill, 67 N. H. 330, 39 Atl. 266; Walker v. Wadley, 124 Ga. 275, 52 S. E. 909.

[5] The lessors urge that the lease contract has been terminated according to its express provisions by the bankruptcy of the Lindy-Friedman Clothing Company, Inc. On the other hand, the trustee insists that the term "lessee" as used in the lease must be strictly construed, and, so construed, must be held to refer to the original lessees, Lindy and Friedman, only. I think such construction too narrow, too technical, because it does not accord with the contemplation of the parties to the lease. It is not to be doubted that the organization of the corporation, now the bankrupt, was contemplated, for the lease itself shows such to be the fact; and I think it is not unfair or unreasonable to say that the intention of both the parties was that the corporation, when organized, should step into the shoes of the original lessees, Lindy and Friedman, and become as fully bound in every respect as Lindy and Friedman were bound. It is not disputable that, if the assignment of the lease had been in the manner and form provided for in the lease, the corporation, the bankrupt, would have been entitled to all the rights and benefits conferred upon the "lessee" named in the lease, and correspondingly would have been subject to all of the obligations imposed upon the "lessee," Lindy and Friedman. Bearing in mind the purposes and objects sought to be accomplished by this provision in the lease, "if a petition in bankruptcy be filed by or against the lessee," etc., it seems clear to me that for all practical purposes the corporation would be considered the lessee—taking the place of Lindy and Friedman under the contract with all the privileges granted, and together with the restrictions, reservations, and conditions stipulated in the lease instrument. While the lease was not formally assigned to the corporation, the trustee claims that the assignment was verbal, and that the original lessees simply admitted the corporation into possession of the leased premises, and that thereafter the corporation paid the monthly rental. If the lease is to be treated as having been formally assigned to the company, now the bankrupt, then, assuredly, the bankruptcy of the company operated as a forfeiture of the lease, and the landlords had the option to re-enter their premises because the contract in express terms provided that the bankruptcy of the lessee should work such forfeiture. The express provision is that—

"If a petition in bankruptcy be filed by or against the lessee in any court of competent jurisdiction, the lessor shall have the right at his option to re-enter said premises and annul this lease."

[6] Whatever view may be taken of the questions hereinabove discussed, there is still another reason why the trustee should not be allowed to hold possession of the leased premises during the life term of the lease. It is hardly necessary to say that this bankruptcy court is a

court of equity, and has the power to administer the bankruptcy law according to its spirit and purposes. Of course, the fundamental purposes of the Bankrupt Act (Comp. St. §§ 9585–9656) are to relieve an unfortunate debtor in certain circumstances from the burden of his debts, take possession of the estate of the debtor subject to the demands of his creditors, and to apply his assets equitably and ratably to the payment of his debts. It is the duty of the trustee to administer and wind up the estate as economically and expeditiously as practicable. In rare instances the trustee is permitted to carry on the business of the bankrupt for a limited time, where it is plainly to the best interests of the estate that such course be pursued. But such is not the case here, for the trustee does not seek to carry on the mercantile business of the bankrupt, but merely asks to be allowed to be subrogated to the leasehold right originally possessed by the lessees. He predicates the petition upon the idea that the lease is of value to the bankrupt estate, but it is to be said that, apparently, he did not so believe for some time after his appointment, nor did he conclude to assert any right to the leasehold estate until after two certain creditors of the bankrupt filed their petition to compel him so to do.

Manifestly, if the trustee assumes this lease it is probable that he cannot wind up the estate in several years. Furthermore, whether or not the assumption of the lease would prove to be a benefit or a loss to the estate is problematical. That the trustee could continue to sublease the leased premises at a profit and not at a loss is mere conjecture. The lease has some five years or more to run. If the trustee becomes a party to it, it will be his duty to see that all its numerous terms or provisions are carried out on the part of the lessee during the entire period of the contract. An examination of the parts of the lease contract which are herein quoted show some of these numerous provisions and requirements. While I do not so decide, it must be observed that the lessors might have the right to insist that the assets of the estate, or so much thereof as necessary, should be kept intact for the payment of future rents as the same may become due. Therefore, conceding arguendo, the right of subrogation, it would be unwise to allow the trustee to exercise such right. This bankrupt case should be closed with convenient speed, and without hazarding a considerable portion of the estate upon the chance of possible gain to be derived by subleasing the premises at an advanced rental.

Decree and order will be entered, vacating and annulling the order of the referee, made and entered on June 10, 1921.