**227 P.2d 633**

**STAMM v. BUCHANAN et al.**

**No. 5285.**

Supreme Court of New Mexico.

Feb. 6, 1951.

Rodey, Dickason & Sloan, Frank M. Mims, Jackson G. Akin, Botts & Botts, Albuquerque, for appellants.

Simms, Modrall, Seymour & Simms, Albuquerque, for appellees.

SADLER, Justice.

The question for decision is whether, after valid assignment of a lease pursuant to lessor's consent contained in the lease, involuntary bankruptcy of original lessee, who as assignor executed the assignment, gave lessor the right to forfeit the lease as against an assignee in possession, performing all the covenants of the lease on lessee's part to be performed, by reason of an option in the lease providing that bankruptcy of the "lessee," voluntary or involuntary, should give lessor the right forthwith to terminate the lease and retake possession of the demised premises.

The material facts are not in dispute. Indeed, they were stipulated by the parties below. Those essential will be stated, employing largely the statement of the case found in the brief in chief of defendants (appellants) which so far as employed by us is admitted by plaintiffs (appellees) to be correct.

On May 16, 1947, the plaintiffs as lessors entered into a written lease of certain store premises in Albuquerque with Save Rite Drug Stores, a Utah corporation, hereinafter called Save Rite of Utah, as lessee. The lease is set forth in full in the transcript. It provided for a term of ten years (April 1, 1948, to March 31, 1958) with a right to renew on certain terms for a further period of ten years. A minimum rent of $1,500 per month was reserved with a provision for further rent of 3% of gross sales above $750,000 per year. In addition to the stipulated rent, the lessee undertook to improve the premises including the installation of a new front, lighting, decoration, heating and ventilation, apparently at a contemplated expense of $20,000.

The two provisions touching assignment and subletting contained in the lease were as follows: "Art. III, § 8 The parties further agree that Lessee contemplates the organization of a New Mexico Corporation which will operate the retail drug business

in the premises covered by this lease. Said Corporation is to have a paid in capital of not less than $100,000.00, and when said corporation is organized, lessors consent that this lease and the privileges hereunder may be assigned by Lessee to said new Corporation provided, however, that the Lessee herein shall remain liable as an original maker and guarantor of the performance of all the terms and conditions agreed to by the Lessee herein, and the New Mexico corporation as Assignee of the Lease, shall in writing agree to be bound by all the terms of the lease, including the recognition of the landlord's lien under the laws of the State of New Mexico, upon all property of the Assignee in the premises rented without in any manner discharging the original Lessee which also remains liable for the performance of the terms and conditions of this instrument." And further: "Art. VI Fourth And it is further agreed that the Lessee shall not assign this lease, nor sublet the leased premises, without the Lessor's previous consent in writing first had and obtained; provided, however, that consent is hereby granted to the Lessee (if said Lessee is not in default hereunder and as long as the Lessee conducts the major portion of the business therein), to sublet a portion or portions of said demised premises, subject to the provisions in this lease set forth, provided always that no part of the demised premises shall be subleased, used or permitted to be used by any person whomsoever except for the sale of merchandise usually kept for sale by a department drug store. This special consent to sublet shall not be construed to confer a consent to any further or different or other subletting of the demised premises."

With respect to bankruptcy the lease provided: "Art X Ninth (c) If the Lessee shall be adjudged a bankrupt, either by voluntary or involuntary proceedings, the Lessor shall have the option to forthwith terminate this lease and re-enter said demised premises and take possession thereof. In no event shall this lease be deemed an asset of the Lessee after adjudication in bankruptcy."

With respect to the designation of parties as Lessor and Lessee, four features of the lease relied on by defendant's counsel as having special significance, are:

(1) The opening sentence of the lease contains this language: "and Save Rite Drug Stores, a Utah Corporation, hereinafter designated 'Lessee.' "

(2) Art. X Ninth (a) covering the rights of the Lessor on default refers said rights to "Lessor, Lessor's heirs, executors, administrators, agents, attorney or assigns" and to "said Lessor, the Lessor's heirs, executors, administrators and assigns"; but impose the correlative duties on "said Lessee," "Lessee," and "the Lessee, Lessee's executors and administrators." *Ibid.*

(3) The last covenant of the lease reads as follows: "It is further covenanted and agreed between the parties aforesaid: The covenants and agreements contained in the foregoing lease are binding upon the parties hereto and their respective heirs, executors, administrators, successors, legal representatives and assigns."

Following the execution of the lease, Save Rite of Utah went into possession under the lease. It proceeded to improve the building extensively and on undisputed testimony spent $51,400 on leasehold improvements.

On September 4, 1947, Save Rite of Utah caused the due organization of Save Rite Stores, Inc., a New Mexico corporation (which is hereinafter called Save Rite of New Mexico). On July 22, 1949, Save Rite of New Mexico had a paid in capital of $100,000. On that day, Save Rite of Utah executed a written assignment of the lease to Save Rite of New Mexico. It recited that it was in compliance with Art. III, par. 8, of the lease, that the assignee corporation had a paid in capital of not less than $100,000, that the assignee was to give a written agreement to be bound by the terms of the lease and that the assignor remained liable for the performance of the lease. The assignment was accepted in writing by Save Rite of New Mexico as assignee, the acceptance containing recitals comporting with the cited language of the lease including the assignee's express assumption of all the terms of the lease.

The lessors refused to recognize the validity of the assignment by Save Rite of Utah to Save Rite of New Mexico and on August 1, 1949, brought the present action to have it declared "void and invalid." It was the contention of the lessors that the assignment was not permitted by Art. III, § 8, quoted above.

Because of this circumstance the consideration for the assignment and the accompanying transfer of furniture and fixtures in the amount of $35,000 was not paid to Save Rite of Utah but was instead paid into escrow by agreement between the assignor and the assignee. Thereafter on or about August 6, 1949, Save Rite of New Mexico went into possession of the premises and has remained in possession since.

On August 30, 1949, Save Rite of Utah was adjudicated a bankrupt by the Federal Court in Utah, and the appointment of the trustee in bankruptcy was confirmed on or about October 15, 1949. Thereafter, on October 24, 1949, O. P. Buchanan was appointed and duly qualified as ancillary receiver of Save Rite of Utah in New Mexico. At the trial, the ancillary receiver was duly substituted for the Utah Corporation as party defendant in this cause.

So far as now material, the original complaint asserted that the assignment of

lease by Save Rite of Utah to Save Rite of New Mexico was invalid and void because not in compliance with Art. III, § 8 of the lease quoted above. By trial amendment, the complaint was amended to seek a declaration that the bankruptcy of Save Rite of Utah, the original lessee, permitted termination of the lease pursuant to Art. X Ninth (c) of the lease quoted above.

At the close of the trial, the court ruled:

(a) that the assignment from Save Rite of Utah to Save Rite of New Mexico complied with the applicable provision of the lease and was valid.

(b) that the bankruptcy of Save Rite of Utah, the original lessee, although occurring after the completed assignment to Save Rite of New Mexico, violated Art. X (c) of the lease and entitled the lessor to terminate the lease.

The several requests of both parties for findings and conclusions inconsistent with those made by the court were refused. Declaratory judgment embodying the two crucial rulings of the court on the points in dispute was entered. From this decision the defendants only have appealed. The plaintiffs have not cross-appealed and the ruling of the court that the assignment was valid when made is now final.

Pending the appeal, Save Rite of New Mexico has remained in possession and paid the stipulated minimum rent of $1500 to the lessors without prejudice to the rights of either party by agreement.

It is thus seen that bankruptcy of the "Lessee" is made a ground of forfeiture under a lease permitting assignment. The narrow question arises whether under this lease, following an assignment consented to by lessor in the lease itself, bankruptcy of original lessee survives as a ground of forfeiture against the corporate assignee, itself in no way in default and meeting punctually all the conditions and covenants of the lease on its part to be performed. The case is unusual in that both the plaintiffs and defendants cite the same cases in argument and each relying upon some of them, attempt to distinguish the others. Those cited are In re Larkey, D.C., 214 F. 867; In re Lindy-Friedman Clothing Co., D.C., 275 F. 453; Moore v. Risley, 9 Cir., 287 F. 10; In re Famous Fain Co., Inc., D.C., 10 F.2d 540; Id., 2 Cir., 13 F.2d 529; Model Dairy Co., Inc., v. Foltis-Fischer, Inc., 2 Cir., 67 F.2d 704; In re Murray Realty Co., D.C., 35 F.Supp. 417; In re Clerc Chemical Corp., D.C., 52 F.Supp. 109; Id., 3 Cir., 142 F.2d 672; Waukegan Times Theatre Corp. v. Conrad, 324 Ill. App. 622, 59 N.E.2d 308; Brodack v. Slabowski, 141 N.J.Eq. 503, 58 A.2d 213; Murray Realty Co. v. Regal Shoe Co., 240 App.Div. 462, 270 N.Y.S. 737, reversed 265 N.Y. 332, 193 N.E. 164; Smith v. Gronow, 1891, 2 Q.B. 394. A reading and appraisal of these decisions leaves us satis-

fied that, on the whole, they tend to support the position taken by the defendants.

■■■ In the first place, the claim of plaintiffs that the lease is terminated by reason of bankruptcy of the original lessee at the outset collides head on with the doctrine that equity abhors forfeiture generally. It is a doctrine that finds frequent application to lease provisions giving lessor an option to terminate upon insolvency, bankruptcy or receivership of the lessee. The rule is well expressed in the following annotation on the subject, to wit: "Although a provision of a lease authorizing its termination by the lessor in the event of the insolvency, bankruptcy or receivership of the lessee is valid and enforceable when applicable, it has been generally said that such a provision is to be construed strictly in favor of the lessee since it provides for a forfeiture." 115 A.L.R. 1191.

We find the rule mentioned and applied in a case where forfeiture of the lease was claimed by reason of the bankruptcy of an assignee of the lessee, in language as follows: "To construe the option paragraph so as to permit the termination of the lease upon the bankruptcy of the assignee would result in a forfeiture which clearly would be inequitable in this case, and is to be avoided. The law frowns upon forfeitures. Forfeitures should never be decreed unless the language of the instrument sought to be construed so states in clear, unmistakable terms." In re Murray Realty Co., D.C.N.Y., 35 F.Supp. 417, 419.

Some of the cases cited, supra, being the larger number of them, holding as they do that the clause terminating the lease for bankruptcy applies to assignee of the lease after a valid assignment, as already stated, support arguendo the position of defendants in the case at bar in their contention that the word "Lessee" as used in Art. X (c) of the lease means the assignee after a valid assignment. The cases falling in this category, of those mentioned above, are In re Lindy-Friedman Clothing Co., supra; Moore v. Risley, supra; Model Dairy Co., Inc., v. Foltis-Fischer, Inc., supra; Waukegan Times Theatre Corp. v. Conrad, supra; Murray Realty Co. v. Regal Shoe Co., supra; Smith v. Gronow, supra.

The case of Waukegan Times Theatre Corp. v. Conrad, supra, is most nearly in point to the one at bar in that it was the original lessee whose bankruptcy, subsequent to an effective assignment, was sought to be made the basis of a forfeiture under a bankruptcy termination clause in the original lease. The suit was one by the assignee in possession to restrain the landlord from enforcing termination. The court granted the relief prayed for, stating that the "bankruptcy clause" should be construed in favor of the tenant and so as to avoid a forfeiture. It declined to relate

the clause to the original lessee, confining it to the tenant in possession and among other things said:

"We first consider whether the lease was in effect between the appellants and appellee, and in approaching this subject we must take notice of the long-established principle of law that forfeitures are not favored by the courts and they will readily adopt any circumstances that indicate an intent to waive a forfeiture. Patterson v. Northern Trust Co., 132 Ill.App. 208, 220; Famous Permanent Wave Shops, Inc. v. Smith, 302 Ill.App. 178, 190, 23 N.E.2d 767. That covenants against assignments will be strictly construed in order to prevent forfeitures, is an elementary proposition of law. Traders Safety Building Corporation v. Shirk, 237 Ill.App. 1.

"As to the meaning of the phrase above quoted, the rule of law is that leases are most strongly construed against the lessor, and if there is any doubt or uncertainty as to the meaning of the grant, it is to be construed in favor of the lessee. We think the master correctly interpreted it in his holding that the parties to the lease knew that the lessee, Manning Silverman, was a sole individual, and by no stretch of the imagination could he be more than an individual or the plural applied to him; that the lessors, when they adopted this phrase, contemplated that the lease, if assigned, might be to one or more persons. It is evident that such assignee or assignees were meant to be embraced in the term 'or any one or more of the lessees, if there be more than one'; *and in line with the Gronow case, supra, we think that the provision as to bankruptcy refers to Silverman, if he was still the lessee, and, in the alternative, to the assignee or assignees if they be the tenant.* The doctrine that any doubt or uncertainty as to the meaning of a provision in a lease is construed most strongly against the lessor, applies equally here. In this connection, it is to be remembered that Silverman was forced out of the picture, and appellee was welcomed as successor, by appellants, and it would be highly inequitable to impose upon appellee, a forfeiture of its rights thereunder, with resulting great financial loss, when appellee is ready, willing and able to carry out and perform all the terms of the lease, with no loss to appellants." (Emphasis ours.) [324 Ill.App. 622, 59 N.E.2d 312.]

In declining to grant the landlords a forfeiture against the tenants in possession by reason of bankruptcy of original lessee the court, in Re Larkey, said: "The only conceivable benefit which a forefeiture would confer upon the landlords is that they might, if relieved of the present tenants, be able to lease their premises at a larger rental. But such a consideration should not commend itself to a court of equity." [214 F. 872.]

These cases aid the position of defendants in construing the bankruptcy termination clause as binding the lessee after a valid assignment. Even if it be sought to weaken their effect by reminding that they *enforce* the termination clause, it is the person against whom the clause is enforced, the tenant in possession, the *assignee,* that makes them of value to the defendants' position. For it would not comport with equitable principles to say the "lessee" means "assignee" to support a forfeiture for the latter's bankruptcy, but is not confined to the same meaning when so to hold would save the assignee's term from bankruptcy of original lessee. In other words, "Lessee" will be construed to mean "assignee" for purpose of *claiming* a forfeiture, but will be denied that meaning for purpose of *defeating* a forfeiture. The foregoing cases are of chief value to defendants' position in their tendency to denude them of any such implication as that just stated.

 Independently of the authority of decided cases, it is not difficult here to deny forfeiture under a fair construction of the lease itself. The instances are too many in which the use of the word "Lessee" can only mean the assignee, after a valid assignment, to deny it that meaning in the termination clause, Art. X (c), as expressing the true intent of the parties, where assignment has taken place. In the very last sentence of the clause itself, reading: "In no

event shall this lease be deemed an asset of the Lessee after adjudication in bankruptcy" serves as an illustration. If lessee, as here, has executed a valid assignment of the lease, as authorized by its terms, ownership of the lease is in the assignee. It is bankruptcy of the latter *alone* that would vest a trustee in bankruptcy with title to and ownership of the lease as an asset, if it should survive bankruptcy and have value. "Lessee" as here used, after assignment, can only mean the assignee; to say the least it describes a tenant in possession under a valid assignment.

In like fashion, the proviso for additional rental in event gross sales should exceed $750,000 and for an annual statement by "Lessee" showing gross sales for preceding twelve months' period; the covenant binding "Lessee" to use premises only as retail drug department store; extending "Lessee" right of renewal of lease; binding "Lessee" to pay for electricity, gas and water, and to make repairs; enjoining "Lessee" not to suffer or permit any nuisance—these and many other instances demonstrate beyond peradventure of doubt that with consent given to assign, upon assignment, these mentions of "Lessee" mean "assignee," after assignment. Unquestionably, if the assignee, Save Rite of New Mexico, had been adjudicated a bankrupt, the plaintiffs would have had no difficulty in claiming and enforcing termination of the lease as against it as the "Lessee" within the

true meaning of that term as used in Art. X (c) of the lease. In view of these considerations, it would violate fundamental equitable principles to hold plaintiffs entitled to the forfeiture here claimed.

 We do not intend to say parties may not so contract as to give a lessor the right to termination of the lease for bankruptcy of either the lessee, or the latter's assignee, where assignment is permitted. What we do say and hold is that where a provision so full of financial hazard and danger to a tenant in possession under an assignment is intended, it must rest on language so plain and unmistakable that the courts are left no alternative but to enforce it according to the letter.

Take the present case as an example. The tenant in possession, according to the findings, is the owner of a valuable leasehold as indicated by the monthly rental of $1500. It is performing punctually all covenants of the lease on its part to be performed. And, yet, if plaintiffs be correct in their contentions, through bankruptcy of its assignor, for which it is in no way responsible, it is to lose perhaps its most valuable asset, its only recourse being whatever relief it may secure against a bankrupt assignor.

The trial court erred in holding the lease was terminated by bankruptcy of Save Rite of Utah, the original lessee. Accordingly, the decree will be reversed and the cause remanded with a direction to the trial court to set aside its decree and enter another in its stead declaring the plaintiffs are not entitled to terminate the lease in question for bankruptcy of their original lessee. The defendants will recover their costs on this appeal.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

COORS, J., not participating.