1998-NMCA-168

967 P.2d 859

**Stephen OSTROWSKI & Catherine Ostrowski, Plaintiffs–Appellants,**

v.

**David BARBER & Ravonna Barber, Defendants–Appellees.**

**No. 18,395.**

Court of Appeals of New Mexico.

Oct. 6, 1998.

Thomas F. Hooker, Jr., Thomas F. Hooker, Jr. & Associates, Albuquerque, for Appellants.

Sylvain Segal, Segal & Soifer, LLP, Albuquerque, for Appellees.

## OPINION

ARMIJO, J.

{1} Stephen and Catherine Ostrowski (Purchasers) and David and Ravonna Barber (Sellers) entered into a real estate contract which provided, in part, that Purchasers make payments to an escrow agent who in turn was instructed to forward payment to Troy & Nichols Mortgage Co. on account of a mortgage debt in Sellers' name. The contract also provided that the Purchasers, within the first year of the signing of the contract, would either formally assume the mortgage with Troy & Nichols or would refinance the amount due under the contract. The question presented in this appeal is whether Purchasers' failure to do either constitutes an act of default thus allowing Sellers to declare forfeiture of the contract, regain title to the property and retain all monies received. We determine that the default provisions of the real estate contract are ambiguous and do not provide for such

a forfeiture under the circumstances presented here. We reverse the Order of the trial court.

## I. BACKGROUND

{2} On June 26, 1992, Purchasers entered into a real estate contract with Sellers for the purpose of purchasing residential property in Albuquerque, New Mexico. The contract consists of a preprinted form with blanks to be filled in by the parties. Paragraph 2 of the contract established a purchase price of $110,000, with a cash down payment of $21,348.61, and the balance payable as follows:

**$88,651.39, the amount of this Real Estate Contract, which Purchaser agrees to pay in monthly installments of $720.30 or more, including interest from June 1st, 1992 on the unpaid principal balance at the rate of 8.5% per annum. The first payment shall be due on July 1, 1992 with like installments due and payable on the 1st day of each succeeding month thereafter until paid in full.**

**In addition to the payments for principal and interest, Purchaser shall pay to the Escrow Agent, with each installment, a pro rata portion of the estimated annual taxes and insurance premiums for hazard insurance on said Property, which payments shall be separately accounted for by the Escrow Agent and utilized to make payment to Troy and Nichols for payment of said taxes and insurance premiums, the sum at the present time being $139.70 per month, making the total monthly payment due and payable on this Contract of $860.00 or more. Purchaser agrees to pay the adjusted payment in the event that trust funds and/or interest rates increase/decrease. The Sellers shall be responsible for providing the Escrow Agent with written notice of any such changes in the payment amount on the underlying lien.**

(Emphasis added.)

Immediately beneath this provision in Paragraph 2, the contract states: **"SEE EXHIB-**

IT 'A' ATTACHED HERETO AND MADE A PART HEREOF."

{3} A separate page entitled "EXHIBIT 'A'" states the following: "It is hereby agreed by all parties that the purchaser within one year from the date of this Contract will either formally assume the mortgage with Troy & Nichols or refinance the amount due under this Contract." (Emphasis added.)

{4} Paragraph 5 of the contract contains a default provision which states, in relevant part:

(a) **Default Notice.** Time is of the essence in this contract, meaning that the parties shall perform their respective obligations within the times stated. If Purchaser fails to make any of the payments required in Paragraph 2, herein, at the times specified, or fails or refuses to maintain insurance or to pay taxes, assessments or other charges against the Property, or fails or refuses to repay any sums advanced by the Seller under the provisions [regarding payment of insurance, taxes, and paving liens], the Seller may make written demand upon the Purchaser, with such notice to specify the default and the curative action required....

. . . .

(c) **Purchaser's Failure to Cure Default Results in Termination of Contract or Acceleration of Entire Unpaid Balance.**

If the Purchaser fails or neglects to cure any default within thirty (30) days after the date Seller's default notice is mailed, then the Seller may, at his option either declare the whole amount remaining unpaid to be then due and proceed to enforce payment of the entire remaining unpaid balance, plus any accrued interest, together with reasonable attorney's fees, or he may terminate Purchaser's rights to the Property and retain all sums paid as liquidated damages to that date for the use of the property, and all rights of Purchaser in the Property shall thereupon end. (Emphasis added.)

{5} Purchasers made monthly payments to the escrow agent when due as required under Paragraph 2 of the contract. However, they did not formally assume the mortgage or refinance the amount due within one year as required under Exhibit "A" to the contract. Consequently, Sellers provided Purchasers with notice of a default on September 9, 1993. After Purchasers failed to cure the alleged default, Sellers terminated the contract and received deeds from the escrow agent on or about April 18, 1994. Sellers recorded the special warranty deed and retained all sums paid by Purchasers including the down payment.

{6} On June 17, 1994, Purchasers filed a complaint for breach of contract. On June 21, 1994, they amended their complaint to add an equitable claim for reinstatement of the contract. On February 27, 1997, the district court held a non-jury trial. At the conclusion of Purchasers' evidence, Sellers moved for a directed verdict on the grounds that Purchasers failed to establish a prima facie case. The district court granted Sellers' motion and dismissed Purchasers' complaint. This appeal followed.

## II. DISCUSSION

{7} At trial, Purchasers' counsel conceded that he was unable to prove that Exhibit "A" was not part of the contract. It is also undisputed that Purchasers did not formally assume the mortgage or refinance the amount due within one year. The only issue we address on appeal is whether the default provisions of the contract allowed Sellers to terminate Purchasers' rights and retain all sums paid by Purchasers under the undisputed facts presented here.

{8} Since resolution of this issue depends upon interpretation of documentary evidence, we are in as good a position as the district court to interpret the real estate contract. *See Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 8, 123 N.M. 526, 943 P.2d 560. We consider the contract as a whole in determining how it should be interpreted. *See id.*

{9} "[A]s a general principle of contract interpretation, an interpretation that

reduces a risk of forfeiture is preferred." *Id.* ¶ 20. Thus, we generally will uphold forfeitures only when a contract expressly provides for them. *See Stamm v. Buchanan*, 55 N.M. 127, 132, 227 P.2d 633, 636 (1951) (" 'Forfeitures should never be decreed unless the language of the instrument sought to be construed so states in clear, unmistakable terms.' " (quoting *In re Murray Realty Co.*, 35 F.Supp. 417, 419 (N.D.N.Y.1940))); *Keesee v. Fetzek*, 106 Idaho 507, 681 P.2d 600, 604 (Idaho Ct.App.1984) ("Although forfeitures are not favorites of the law, contracts expressly providing for them generally will be upheld."); 14 Richard R. Powell, *Powell on Real Property* § 882[3][d], at 81–243 to –244 (1998) ("Forfeiture . . . is a right available to the seller only if the contract expressly provides for it.").

■ {10} Although the parties intended that the language contained in Exhibit "A" form part of the contract, the default provisions in Paragraph 5 of the contract do not expressly provide for a forfeiture in the event that Purchasers failed to comply with the terms of Exhibit "A." Rather, the provisions regarding forfeiture in Paragraph 5 specifically refer to three types of defaults: (1) failure "to make any of the payments required in Paragraph 2, herein, at the times specified"; (2) failure "to maintain insurance or to pay taxes, assessments or other charges against the Property"; or (3) failure "to repay any sums advanced by the Seller" with regard to payment of insurance, taxes, and paving liens. It is not clear that a failure to assume the mortgage or refinance the amount due constitutes a failure to make such payments. This lack of an express provision for forfeiture in the event that Purchasers did not formally assume the mortgage or refinance the amount due within one year creates an ambiguity in the contract. *Cf. Nearburg*, 1997–NMCA–069, ¶ 7, 123 N.M. 526, 943 P.2d 560 ("Whether a contract contains an ambiguity is . . . a question of law reviewed de novo."). Because forfeitures are not favorites of the law, we must resolve this ambiguity against a forfeiture in this case. *See Stamm*, 55 N.M. at 132, 227 P.2d at 636.

## III. CONCLUSION

{11} For the foregoing reasons, we reverse the Order of the trial court dismissing the complaint.

{12}  **IT IS SO ORDERED.**

APODACA, and BOSSON, JJ., concur.

## REAL ESTATE CONTRACT

09262423                    0003062

THIS CONTRACT IS MADE in triplicate this 26th day of June, 1992 by and between DAVID S. BARBER and REVONNA R. BARBER, husband and wife _____ whose address is 17125 Parsimmon Avenue NE, Albuquerque, New Mexico 87111 ____ hereinafter called the Seller, and STEPHEN J. OSTROWSKI and CATHERINE OSTROWSKI, husband and wife whose address is 132 West Meadowlark Lane, Corrales, New Mexico 87048 hereinafter called the Purchaser. Whenever a masculine pronoun is used, it shall also be considered as referring to the female gender and plural pronouns, whichever is proper.

1.  SALE: The Seller, in consideration of the promises and agreements herein made by the Purchaser, agrees to sell and convey to the Purchaser the following described real estate, hereinafter called the Property, in the County of Bernalillo and State of New Mexico:

Lot numbered one-hundred-thirty-seven (137) in Block numbered One (1) of the Amended Plat of ACADEMY PLACE, UNIT 4, a Subdivision to the City of Albuquerque, New Mexico, as the same appears on the Plat thereof, filed in the County Clerk of Bernalillo County, New Mexico, on May 14, 1974.

Subject to reservations, restrictions and easements of record and to property taxes for the current year and all subsequent years.

The Seller agrees upon completion of all terms and conditions of this Contract by the Purchaser, that the Purchaser shall then receive the Warranty Deed and related documents placed in escrow with this Contract.

2. PRICE AND PAYMENT: The Purchaser agrees to buy the above-described Property and to pay Seller therefor the total sum of ONE HUNDRED TEN THOUSAND and N0/100 ------- Dollars ($110,000.00), payable as follows: TWENTY–ONE THOUSAND THREE HUNDRED FORTY–EIGHT and Dollars (21,348.61), cash down payment, the receipt of which is hereby acknowledged, and the balance of EIGHTY–EIGHT THOU-SAND SIX HUNDRED FIFTY–ONE and 39/100 ------- Dollars ($88,651.39), payable as follows:

$88,651.39, the amount of this Real Estate Contract, which Purchaser agrees pay in ·monthly installments of $720.30, or more, including interest from June 1st, 1992 on the unpaid principal balance at the rate of 8.5 % per annum. The first payment shall be due on July 1, 1992 with like installments due and payable on the 1st day of each succeeding month thereafter until paid in full. In addition to the payments for principal and interest, Purchaser shall pay to the Escrow Agent, with each installment, a pro rata portion of the estimated annual taxes and insurance premiums for hazard insurance on said Property, which payments shall be separately accounted for by the Escrow Agent and utilized to make payment to Troy and Nichols for payment of said taxes and insurance premiums, the sum at the present time being $139.70 per month, making the total monthly payment due and payable on this Contract of $ 860.00 or more. Purchaser agrees to pay the adjusted payment in the event that trust funds and/or interest rates increase/decrease. The Sellers shall be responsible for providing the Escrow Agent with written notice of any such changes in the payment amount on the underlying lien.

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

The payments as above provided shall be paid to the escrow agent and continue until the entire unpaid balance of the purchase price (exclusive of any prior lien or obligation being assumed) plus any accrued, interest due to the seller is fully paid. Said unpaid balance shall bear interest at the rate of eight and one-half percentum (8.5%) per annum from the effective date of June 1, 1992.

APPLICATION OF PAYMENTS: Check and initial only one of the following two paragraphs.

XX (a) Payments, excepting prepayments shall be applied to regularly scheduled Installments in the order in which the same were due and shall be credited as though the payments were made on their respective due dates.

Initials

(b) Payments shall be applied as of the date of receipt by Escrow Agent first to accrued interest then to principal balance of this Contract.

EXHIBIT A                     RP00012

This form was prepared by the Realtors Association of New Mexico (RANM). RANM makes no warranty of the legal effectiveness or validity of this form. You should consult your attorney with regard to the effectiveness or validity of any proposed use of this form.