IRVIN CATLIN, PLAINTIFF IN ERROR, v. LYMAN WRIGHT, DEFENDANT IN ERROR.

1. **Lease:** FORFEITURE. In a lease for a term of years of a farm and a lot of cattle there was a condition that on the failure of the lessee to furnish the stock with "sufficient care, food, and water during the winter or feeding season," the lessor had the right, "at his option," to terminate it "and take immediate possession of said premises and stock." *Held,* That this option could be lawfully exercised only within a reasonable time after the lessor learned of the lessee's default.

2. ———. Case examined, and the verdict found to be contrary to evidence, and the instructions to the jury in conflict with the rule here stated.

ERROR to the district court for Stanton county. Tried below before BARNES, J.

*H. C. Brome,* for plaintiff in error.

*John A. Ehrhardt,* for defendant in error.

LAKE, CH. J.

The first of the alleged errors is, that the verdict is not sustained by sufficient evidence.

The right of the defendant in error to recover in the action depended altogether upon the fact being established that, under the lease, he was entitled to declare it terminated, and reclaim the cattle at the time he did. We think there can be no doubt whatever that he would have been entirely justified in doing so at almost any time during the winter months; for the testimony is pretty strong to the fact of the cattle not having been then suitably cared for. But it is contended on behalf of the plaintiff in error that, for causes which he might have taken advantage of during those months, he had no right to terminate the lease and assert a forfeiture so late as the month of June following.

The particular clause of the lease which gave to the defendant in error the right to terminate it and take back his stock, was this, that "if the said party of the second part fails to take good care of said stock, and provide them with sufficient grasses, water, and salt during the summer or grazing season, and sufficient care, food, and water during the winter or feeding season, then the said Lyman Wright shall have the right, at his option, to declare this lease at an end, and thereby cancel and annul the same, and take immediate possession of said premises and stock."

As we understand the law governing this provision, the option given to the lessor was to be exercised, if exercised at all, within a reasonable time after learning of the lessee's default in caring for the stock. In other words, it was possible for the lessor, by neglecting to assert his right at the time of a known default, or within a reasonable time afterwards, to waive it. In this particular we are aware of no distinction between leases and other contracts. It seems to be a general rule that if a party become entitled to rescind or terminate a contract, or claim a forfeiture, by reason of the default of another, he must do it within a reasonable time. Chitty on Contracts, *641.

Referring to the evidence contained in the bill of exceptions, we find no difficulty in saying that there was probably ample cause shown by the lessor for terminating the lease long before he undertook to do so. Even so early as the last of October, 1880, and from thence to the fore part of January, 1881, it is possible that he would have been justified in demanding back his stock. Wright himself testified that, in October, 1880, he was at the place and found that "the stock had been in the yard two days without a mouthful to eat, and stood in the mud just about knee deep." Having some words at this time respecting the care of the cattle, Catlin, he says, offered to give them up, to which he replied that he was "not prepared to take them now." Wright says he next saw the cattle about the seventeenth of January, at which time they "had no place to lie down," because of the filthy condition of the yard in which they were kept. And in this he is corroborated by other testimony which he produced, although it was denied by Catlin. If, however, what Wright says were true, he would doubtless have been upheld in at once, or within a reasonable time thereafter, demanding back his stock. But he did not see fit to take that course. On the contrary, he says he remained with Catlin about a month, and assisted him in feeding and caring for the animals, and that while

he was there they improved. At the end of this time, which must have been about the seventeenth of February, Catlin's "brother had come up from Ponca" to help him, and there being no further need of Wright's services he left. From this time on to the second day of June, whenthe notice of Wright's election to terminate the lease was served, and the cattle demanded, there is a total absence of evidence to show a want of "sufficient care, food, and water."

Now, according to our understanding of the law applicable to this state of facts, Wright could not wait until the month of June, and after the grazing season had commenced, and then insist upon a forfeiture of Catlin's right to the stock because of neglect occurring in October or January, or indeed at any time during the winter months. To permit him to do so would be exceedingly unjust. Perhaps if the property to be reclaimed through the forfeiture were such that the possession of it during the delay would have been of a present benefit to the lessee, the rule might be otherwise. The possession of this stock, however, attended as it necessarily was by considerable labor and expense, was a burden, which the lessor could not lawfully impose upon the lessee, without at the same time waiving his right to a forfeiture for any previous neglect.

The testimony, we think, seems to show pretty clearly that, notwithstanding Catlin's neglect to live fully up to the requirement of the lease, Wright was quite willing he should have the cattle until the arrival of the grazing season, when further feeding was unnecessary, and the expense of taking care of them inconsiderable in comparison with that of the winter season. Such being the showing made by the record, we are of opinion that the verdict is in direct conflict with both the evidence and the law of the case.

It is further claimed that the instructions given to the jury were erroneous, and also that the instructions requested on behalf of the plaintiff in error ought to have been given. By the first instruction the jury were told that "the only

38

question" for them "to consider and determine" was "whether or not defendant so neglected to care for said stock, or perform the conditions of said lease, as to justify the plaintiff in declaring said lease forfeited, and take possession of said stock." The second instruction was to the effect that if the jury found "that the defendant took good and sufficient care of said stock,"    *    *    *    "and kept and performed the conditions of said lease on his part," then they should return a verdict in his favor. And by the third instruction that if they found he did not take "such care" they should return a verdict for the plaintiff. These instructions were clearly erroneous in making the result dependent alone upon the single fact of want of proper care of the stock, at any time while in charge of the lessee, and in ignoring altogether the question of waiver which was pointedly raised by the evidence, and brought directly to the attention of the judge by the instructions which he refused.

As to the instructions ·tendered on behalf of the lessee, our views are that, in requiring the lessor to exercise his option "*immediately*" upon the fact coming to his knowledge" that the cattle had not been properly cared for, they called for the application of an unreasonably restrictive rule, there was no error in refusing to give them.

The only remaining matter of complaint is the admission of the testimony of the two witnesses named Mack, relative to their own stock during the winter in question. What they said as to the number they wintered was proper as showing their experience and competency to give opinions respecting the care of such animals during the winter season. But the condition in which their stock came out in the spring was wholly immaterial, and their testimony as to that ought to have been excluded.

For the errors we have pointed out the judgment is reversed and a new trial awarded.

REVERSED AND REMANDED.