**MODEL DAIRY CO., Inc., v. FOLTIS-FISCHER, Inc.**

**GRACEL REALTIES, Inc., v. IRVING TRUST CO.**

**No. 49.**

Circuit Court of Appeals, Second Circuit. Nov. 13, 1933.

Rehearing Denied Dec. 4, 1933.

705

Arnold Lichtig and Herbert A. Mossler, both of New York City, for appellant.

McDermott & Turner, of New York City (W. Irving Taylor and Charles J. McDermott, both of New York City, of counsel), for appellee.

Coudert Bros., of New York City (Thomas K. Finletter and Milton I. Newman, both of New York City, of counsel), for Reorganization Committee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

A simple creditor of the defendant, Foltis-Fischer Incorporated, filed a bill in equity, alleging its immediate inability to pay its debts, the likelihood that its assets would be wasted by a scramble of its creditors, and the necessity that the court should sequester them for the protection of all; it asked for the appointment of a receiver, who should take them over, and, if necessary, distribute them. The defendant consented, and the Irving Trust Company was made receiver and went into possession; among the assets was a term for years of property, used by the defendant as a restaurant. The defendant held this as assignee of the term from the Foltis Corporation, which had leased it from another company. The lessor's reversion came by mesne conveyances to the Gracel Realties, Inc., the appellant. The receiver got from the court an order, giving it a period of six months from June 14, 1932, to disaffirm the lease, which was later extended to January 31, 1933. At the end of six months the grantee of the reversion gave notice that the receivership was a breach of a condition in the lease and ended the term; it asked to evict the receiver. The judge decided in the receiver's favor, on the ground that the grantee, the appellant, had "waived" the breach. The important clause in the lease was as follows: "If the tenant shall be adjudicated insolvent or bankrupt, or shall take the benefit of any insolvency act, or shall have a receiver or trustee appointed of its property, or if this lease or the estate of the tenant hereunder be transferred or passed to or devolve upon any other persons, firms or corporations, except in the manner herein provided," the lessor may re-enter upon fifteen days' notice, unless the breach is meanwhile mended. The lessee made a deposit of $6,250 as guarantee of performance, which the lessor did not turn over to the grantee when it conveyed the reversion.

Several questions arise. First, the receiver urges that its tenure, being merely custodial, was not within the condition reserved. Second, that in any case, the condition covered only breaches by the lessee, the Foltis Corporation, so that a receivership of the assignee of the term, the defendant, was not within the lease. Third, that the conduct of the grantee of the reversion during the period given the receiver to disaffirm, was a "waiver" of its right of re-entry; or, if not, that its delay of six months barred the remedy. Last, that in any case the original deposit must be restored as a condition of re-

entry, there being no breach of any other covenant in the lease for which it could stand as security. We are informed in the briefs that since the decision the receiver under a "plan of reorganization" has ·assigned the term to another company, and a committee of creditors intervenes on the appeal to sustain the title.

■■ It is true that courts do not look upon such conditions with a friendly eye, classing them as forfeitures. West v. Guaranty Trust Co., 162 App. Div. 301, 311, 147 N. Y. S. 421; Niles Land Co. v. Chemung Iron Co., 234 F. 294, 298 (C. C. A. 8); In re Prudential Lithograph Co., 270 F. 469, 472 (C. C. A. 2); The Elevator Case (C. C.) 17 F. 200, 202. Nevertheless they are valid, and we must give effect to the fair meaning of the language used. There can be no doubt that the word, "receiver," in the clause just quoted includes a receiver appointed in such a suit as that before us, though he does not take title. No receivers do, except when some statute so provides. Here the very contrast between receivers and trustees shows that the passage of title could not have been essential. Again, we cannot confine the word to receivers in bankruptcy, though its immediate juxtaposition lends some color to the argument; such a limitation would break the word from its general context. A more plausible argument is that the clause as a whole concerns only insolvency which an "equity receivership" does not require. It is true that such bills carefully avoid the allegation of insolvency, and indeed usually say that the defendant is solvent, though the truth is generally, if not always, the opposite. We should be unwilling to stand on so narrow ground, especially when the clause includes assignments for creditors, which presuppose insolvency as little as "equity receiverships," and no more often accompany it in fact. The plight of a lessor whose lessee consents to such a bill is quite as bad as though he were alleged to be insolvent; the court impounds his property in invitum, and there is as much reason for his wishing to be free of the suit in one case as in the other. The receiver, though not truly a tenant, is in possession and prevents him from disposing of the premises as he would. Unless the lease contains a condition against passage of title, he must suffer the term to be sold to one whom he may not desire. Gazlay v. Williams, 210 U. S. 41, 28 S. Ct. 687, 52 L. Ed. 950, 14 L. R. A. (N. S.) 1199. It is quite true that in the lease at bar any devolution of title is also a condition; but the condition against a receivership is apparently in amplification of the general purpose, and we ought not to limit its scope to a special class of devolution.

■■ The second point is answered by the form of the lessee's assignment of the term, a tripartite agreement to which the lessor was a party, and in which the assignee agreed to be bound by all conditions in the lease, the lessor's consent to the assignment being conditional upon that undertaking. Any intimations in Gillette Bros. v. Aristocrat Restaurant, 239 N. Y. 87, 145 N. E. 748, that such a condition refers to the lessee alone, are therefore not applicable. The important question, and, as we have said, that on which the judge based his decision, is as to "waiver." That unhappy word has done much to confuse the law, in this, as in other fields. In this situation it may mean either that the right of re-entry is impliedly limited to a prompt exercise; or that it has been abandoned; or that the lessor's conduct has caused the lessee to rely upon it to his detriment. The last generally goes as an "estoppel." The books at times do speak of delay as though it alone were enough to end the remedy, but never, so far as we can find, except when discussing the lessee's action in reliance upon it. Catlin v. Wright, 13 Neb. 558, 14 N. W. 530, is perhaps the nearest to a holding; but even there the decision appears to have gone rather on the tenant's continued feeding of the cattle after the original breach had passed. In Kelly v. Varnes, 52 App. Div. 100, 64 N. Y. S. 1040, the tenant, though in default for rent, had held over and bound himself for a second year; that was certainly a change of position. The discussion usually covers the gross situation somewhat loosely, and delay is of course a relevant factor in the picture as a whole. But on principle we cannot see why anything short of abandonment or "estoppel" should put an end to this remedy, any more than to others. It is the tenant who is and continues in default; it is not apparent why he should be allowed to avoid his bargain, unless the delay has put him at some disadvantage, which prompt assertion of the remedy would not have caused. We cannot say à priori that the lessee's affairs will be less disrupted by an immediate re-entry than after a delay of six months; if receiverships are of any value at all, the creditors should be in better position to protect the estate after the delay, than at the beginning.

■ Though delay as such is immaterial, if the lessor elects not to re-enter his decision is final; it will be inferred from the receipt of rent accruing after the breach, or from any other recognition of the continuance of the

term. Greene's Case, 1 Leonard, 262; Green's Case, Croke's Eliz. 3; Pennant's Case, 3 Coke, 64 (b); Goodright v. Davids, 2 Cowp. 803; Roe v. Harrison, 2 Term Rep. 425. Courts have been at times astute to find that the lessor has so elected. Thus in Durand & Co. v. Howard & Co., 215 F. 585, L. R. A. 1915B, 998, we held that it was a recognition of the continued term for the lessor to ask the court to fix the period in which a receiver must affirm. Perhaps it is possible to construe such a request as meaning that if the receiver does affirm, the lessor will accept him as a tenant, though it would seem equally consistent to say that the lessor meant only to learn whether the occasion for exercising his remedy will ever arise. We need not say whether we should any longer follow Durand v. Howard, if the point again arose, because here it was the receiver, not the grantee, which got the court to fix the period for affirmance; certainly there was nothing in that, manifesting an election. In Ward v. Day, 4 Best. & S. 337, affirmed in the Exchequer Chamber, 5 Best & S. 359, the lessor had recognized the lease as continuing by negotiating with the lessee for an extension beyond the expiration of the whole period of the original term, which presupposed that it would not be cut short by re-entry. There is no reason to suppose that the result would have been the same, had the lessor negotiated for a new term to commence upon re-entry; such a negotiation would rather indicate that the lessor meant to assert his remedy, which alone would give him power over the term. Here the grantee answered an inquiry of the receiver by offering to consider any "reputable restaurant operator" who might be suggested; a plain intimation that the final decision lay in its hands. That was, so far as appears, its attitude throughout the six months, and it gave no color to pretend that the grantee had elected to abandon its power over the premises. It is true that the assignment of the term to a new tenant would have been a second breach, but it seems to us unnatural to refer the reservation to that alone. If the grantee meant to keep its hold over the term, it would in all probability do so by any means, existing or future, which lay in its hands. Nor can we regard the receipt of the receiver's payments for use and occupation as an election. It is true that the contrary was said obiter in Re Frazin, 183 F. 28, 33 L. R. A. (N. S.) 745 (C. C. A. 2), and was perhaps one ground of the decision in Durand & Co. v. Howard & Co. But it was clearly an inadvertence. The receiver does not take over the term, when he goes into possession by the court's order, or before his own election. New York, P. & O. R. R. v. N. Y., L. E. & W. R. R. (C. C.) 58 F. 268. The court puts him there by its own power; the lessor has nothing to say about it. He must take what compensation the court chooses to give him, or he will get nothing; his acceptance cannot be a recognition of a term or whom he has no power to exclude. We overrule those decisions pro tanto, and upon the whole case we cannot find any evidence of an election to abandon the remedy.

The question of "estoppel" is closely related to what we have just said. Indeed, it is hard to find more in it than election; because, if the lessor's conduct once indicates an election not to pursue his remedy, he may not pursue it, whether the lessee has acted in reliance on it or not. On the other hand, if the lessee has acted in reliance upon the lessor's conduct, he does so at his peril that the interpretation which he puts upon it, will be what the court finds reasonable. Thus, there would seem to be no scope for the application of "estoppel" to the situation. However, in practice no doubt, the approach of a court will be much controlled by the lessee's reliance upon the lessor's conduct, and, though there be in theory no justification for the distinction, courts have so repeatedly spoken in terms of "estoppel" as perhaps to make it really a separate category. In the case at bar there is no basis for invoking it. First, the receiver itself wrote to the grantee each time it remitted its payments for "use and occupation" that the grantee might accept them "without prejudice to any claim you may have against the estate of Foltis-Fischer, Inc." It is scarcely possible to construe this as no more than a reservation of the right to file a proof of claim against the receiver, for, so far as appears, there was no such claim. Besides, that language, addressed to a lessor, could be so restricted only by an unnatural limitation; more properly it meant that the grantee should not lose any of its rights against the assignee, spoken of as the "estate." It served to show that the receiver recognized that all the legal relations between the grantee and the assignee still remained as they were.

However that may be, the negotiations of the receiver for a new tenant could not have been carried on in reliance upon the grantee's putative assurance that it would not re-enter. Even if we construed its inaction as such an assurance, an assignment of the term to a new tenant would, as we have said, be a second breach of condition, which would give the

708

grantee an independent right of re-entry. At least the receiver had no warrant for supposing that the grantee meant to abandon that; on the contrary, as we have seen, it gave clear intimation that it reserved the right to reject any new tenant, which presupposed some power to re-enter. The receiver therefore knew that it must satisfy the grantee, and it cannot be said to be prejudiced because the grantee has chosen to make its reservation effectual through the use of the existing power rather than of one which would arise in the future anyway. In such cases there is at times a disposition to assume that the creditors in some way succeed to better rights than their debtor, as though his embarrassment put them in a stronger position. It is true, indeed, that a lessor may be held off for a season by the mere arm of the court, though, strictly, that is an anomaly. The period ought to be limited to the most immediate and pressing necessities, and the power be exercised with the greatest circumspection. The notion that the creditors may for an indefinite period make use of property which the lessor has reserved a power to retake, is wholly indefensible. We think that the grantee was entitled to an immediate order evicting the receiver, and that it may now evict the new tenant.

There remains only the question as to the return of the deposit. The lease allowed the lessor, after re-entry for any reason, to relet the premises and charge the lessee with the difference. In New York under such a lease the lessee may not sue for the deposit until the expiration of the period of the term, though the lessor has re-entered. Lenco, Inc., v. Hirschfeld, 247 N. Y. 44, 159 N. E. 718; In re Homann, 45 F.(2d) 481 (C. C. A. 2). Thus, it is not necessary to decide whether an assignee of the term succeeds to the lessee's rights in the deposit, or whether a grantee of the reversion, who has not received it, is liable like the lessor. The receiver's right to sue will not be affected by any decree made here.

Decree reversed; cause remanded with instructions to decree that the receiver or its grantee shall surrender possession to the Gracel Realties, Inc.

On Petition for Rehearing.

PER CURIAM.

If there is no grantee of the receiver, but only a sublessee, we have done no harm in directing the District Court to evict him. How far a sublessee who took pending the proceeding is bound by the decree, either because of actual notice or otherwise, under the doctrine of lis pendens, we do not now decide; indeed, the point has not been argued, nor are the facts before us. It will indeed be a curious result if the receiver can defeat this whole proceeding by introducing a new interest pendente lite, but we leave all such questions to the District Court.

Rehearing refused.