**415 FIFTH AVENUE CO., Inc., v. FINN.**

**In re CHILDS CO.**

**No. 205.**

Circuit Court of Appeals, Second Circuit.

Dec. 28, 1944.

Lorenz, Finn & Lorenz, of New York City (Joseph Lorenz, of New York City, of counsel), for appellant.

Birrell & Birrell, of New York City (Theodore E. Larson, of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This appeal questions the correctness of the District Court's ruling that a landlord validly exercised an option to terminate the tenant's lease. The debtor, which operates a chain of restaurants, in 1931 leased from the appellee's predecessor in title the land and building located at 1551 Broadway. The lease was to run for a term ending May 1, 1947, and carried an annual net rental of $49,000.[1] Paragraph 2 of the lease provided that "if a Receiver or Trustee be appointed for the Lessee's property, and such Receivership or Trusteeship shall not be vacated within thirty (30) days after the appointment of such officers", then the lessor "may at its option cancel and terminate this Lease and upon the exercising of such option this Lease shall thereupon come to an end and be of no further force and effect. * * *" On August 26, 1943, the debtor filed its petition for reorganization under chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The court forthwith approved the petition and appointed the appellant as the debtor's trustee; and the latter entered into possession of the premises. On June 23, 1944, the lessor gave the trustee written notice of its cancellation of the lease by virtue of the provision above quoted. The lessor then petitioned the court to adjudge that the term of the lease was ended and to order the trustee to surrender possession. The trustee filed an answer to the petition and the matter was referred to a special master who recommended after hearings that the petition be granted. The present appeal is taken from the order of the District Court confirming the report of the special master.

It is conceded that the appointment of a trustee of the debtor's property and the nonvacation of such appointment within thirty days gave the lessor the power to end the lease if he exercised such power within a reasonable time. The appellant

---

[1] In 1941 the parties by agreement modified the amount of the annual rental but it is unnecessary to specify the terms of the modification.

contends, however, that the power was not exercised within a reasonable time. He contends further that the lessor was estopped to exercise it by reason of misrepresenting through its attorneys its intentions and thereby lulling the appellant into inaction while rental values in the locality were rising and the lessor was negotiating with a new prospective tenant to whom the premises were leased before notice of cancellation was given to the appellant.

The special master and the District Court were of opinion that the lessor exercised its option within a reasonable time in view of negotiations carried on between the parties for the making of a new lease on mutually satisfactory terms. We agree. In Model Dairy Co. v. Foltis-Fischer, Inc., 67 F.2d 704, 706, we said that mere delay in the exercise of the lessor's power to terminate was not a persuasive consideration without a showing that he had abandoned it or that the lessee to his detriment had relied upon the landlord's delay; and a delay of six months was held not unreasonable. In Shear v. Healy, 208 App.Div. 269, 203 N.Y.S. 387, a delay of three years was held not fatal. Since there is no evidence whatever that the lessor intended to abandon its power to cancel, we pass to a consideration of the alleged estoppel.

Negotiations between Mr. Joseph Lorenz, attorney for the trustee, and Messrs. Lowell Birrell and Herbert Birrell, attorneys for the landlord, began on December 6, 1943. Mr. Lowell Birrell suggested a lease on the old terms as modified by the 1941 agreement; Mr. Lorenz replied that the rental was too high.[2] On January 28, 1944, a conference was had between Mr. Lorenz and Mr. Herbert Birrell at which the former proposed that a rental dependent upon a percentage of the tenant's sales might be the basis for a new lease. Mr. Birrell replied that this seemed a good arrangement to him personally but he was not authorized to accept the proposition and would have to take it up with his principal. In subsequent telephone conversations, the last one occurring on February 7, Mr. Herbert Birrell told Mr. Lorenz that the desirability of a lease providing for a rental based on earnings would depend to a large extent upon the debtor's new management which could not

be known until the reorganization had progressed further, and that there was no hurry about the matter. The next meeting between the attorneys was held on March 23, 1944, at which time Mr. Lowell Birrell asked Mr. Lorenz whether the trustee would consent to give up the premises. Mr. Lorenz replied that he believed the lessor had waived its right to exercise the option to cancel the lease, and the meeting broke up in disagreement. In the meantime, beginning in January, the landlord had been considering offers by others to lease the premises, but the trustee was not informed of such offers. On May 9th Mr. Lorenz wrote Mr. Lowell Birrell that the trustee wished to assume the lease as modified by the 1941 agreement. No reply to this letter was received. At the end of May the trustee sent a check to the lessor for the full amount of the rent due, but the lessor returned it, lest acceptance should prejudice its rights.

We see nothing in these facts to create an estoppel against the lessor. The appellant claims that Mr. Herbert Birrell's statement that the desirability of a lease with rental based on earnings would depend on the debtor's new management and there was no need for hurry lulled the trustee into inactivity and caused him to do nothing further in connection with the premises. But all he could have done was to negotiate with the lessor for a new lease. There is nothing to indicate that if such negotiations had been diligently prosecuted by the trustee between February 7th and March 23rd, they would have resulted in an agreement between the parties. The lessor's willingness in December to have the trustee "assume" the modified lease is no proof that he would have agreed to it in February, when offers from other prospective tenants were under consideration. Nor was there anything unfair in the lessor's failure to inform the trustee of such offers; the trustee was aware that rental values were rising and had no reason to suppose that the landlord would deal only with him. As we see it, each side was haggling to get the best terms possible from the other without disclosing the terms which would be satisfactory to it. The maximum inference to be drawn from the remarks of the lessor's attorneys is that the lessor was in no hurry to come to a decision; and even if it was a mis-

---

[2] Although the parties spoke in terms of "assuming" the lease as modified, what was meant was the making of a new lease at the same rental.

representation, as the appellant contends, because the lessor's attorneys had already decided that a rental based on earnings would be unacceptable, we do not see that that is relevant. There was no representation that the lessor would not exercise its power of termination if it should later reject the trustee's offer. Whether such a representation, if it had been made, would have furnished ground for an estoppel we need not decide.

The order is affirmed.