**Waukegan Times Theatre Corporation, Appellee, v. Nellie Conrad et al., Appellants.**

**Gen. No. 9,984.**

Opinion filed February 8, 1945. Released for publication February 26, 1945.

SNYDER & CLARKE, of Waukegan, and ASHCRAFT & ASHCRAFT, of Chicago, for appellants; GERALD C. SNYDER, of Waukegan, and NORMAN L. OLSON, of Chicago, of counsel.

MAX M. & SAMUEL GROSSMAN, of Chicago and GEORGE W. FIELD, of Waukegan, for appellee; MAX M. GROSSMAN, and LOUIS N. GROSSMAN, both of Chicago, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

This cause is here by an appeal by the defendants below from a decree of the circuit court of Lake county, making permanent an injunction restraining each of

the appellants from prosecuting a pending forcible entry and detainer suit theretofore instituted by Nellie Conrad or from prosecuting any other action for possession of the premises involved in this proceeding. The decree held a certain lease, hereinafter mentioned, to be in effect between the parties, it construed the ninth paragraph thereof relating to the division of the cost of fuel oil for heating the premises adversely to the contention of appellants and dismissed for want of equity the counterclaim of Nellie Conrad, for possession, double rent, attorney's fees, and for an equitable lien on the personal property in the theatre, except that part thereof pertaining to the amount claimed to be due her for such fuel oil. No question is raised as to the dismissal of those parts of the counterclaim not pertaining to the fuel oil. Cross error is assigned on the refusal of the trial court to permit the filing of a supplemental complaint. The record discloses that this suit was instituted by appellee against appellants in January 1939. At that time, and for several years previously, appellant Nellie Conrad was the owner of a large business property in the City of Waukegan, encumbered by a trust deed held by Western and Southern Life Insurance Company, the other appellant. Prior to December 1934, the building had a large auditorium, previously used as a dance hall, occupying more than one half the ground area, and the remainder of the building was tenanted by small stores, apartments, and offices, the entire premises being heated by one furnace. Under date of December 27, 1934, Nellie Conrad executed a ten-year written lease of the auditorium to Manning Silverman, from March 1, 1935 to February 28, 1945, inclusive, at a term rental of $90,000, payable in monthly instalments of $750 each, in advance each month, with a provision that the leasee should expend $10,000 or more, within 60 days, to convert the dance hall into a motion picture house, and

furnish lien waivers keeping the premises free from liens.

The lease provides that the lessee may sublet in whole, but shall not assign the lease without the consent in writing of the lessor first had and obtained; and that "If lessee, or anyone or more of the lessees, if there be more than one, shall . . . be adjudged a bankrupt, lessor may terminate this lease," with a provision that in such event payment shall be made at once of a sum equal to the rent for the then unexpired term, as liquidated damages.

The ninth clause of the lease provides:

"Lessor shall furnish to lessee in the radiators in said demised premises, a reasonable amount of hot water heat or steam heat at reasonable hours if the weather and temperature require it, for the use of lessee. . . . Lessee shall pay one half the cost of the fuel furnished to the heating plant used to heat said premises, it being specifically understood that said heating plant heats, in addition to the premises herein demised, the so-called 'Pantheon Building' located at 38 S. Genesee Street, Waukegan, Illinois, consisting of stores, apartments and offices."

The counterclaim alleges money due for fuel oil, and appellee's answer thereto prays for a construction of the ninth clause, denying it was indebted to defendants as alleged in the counterclaim.

The lease was signed by both parties on December 27, 1934. At that time a proceeding to foreclose the trust deed had been filed, on account of its being in default, and the insurance company would not consent to the lease until an agreement assigning the rents to it was executed. Accordingly, on January 14, 1935, its consent, and an assignment by the lessor of "her entire interest in and to the within lease, and the rent thereby reserved" were indorsed on the lease, and contemporaneously therewith, a written agreement was entered into between Nellie Conrad, the insurance com-

pany, and Schwartz and Co., appointing the latter as agent for the renting and management of the property, and paying the net rentals to the insurance company, and assigning all the rentals to the insurance company "in order better to secure the payment of said mortgage indebtedness and the performance of all covenants of said trust deed and this agreement and the payment of all amounts which may be due from time to time hereunder."

Mr. Silverman remodeled the dance hall, and in March 1935· incorporated the Silver Illinois Theatres Corporation, which operated the theatre from April 1935, until some time in January 1937, when a notice was served on Silverman by the Schwartz agency to terminate the lease on account of an arrearage of rent for one month and $1,400 or $1,500 for fuel oil. Ben Miller, a lawyer representing another party interested in the corporation organized by Silverman, called on Schwartz to adjust the matter, and Schwartz told him he was willing to co-operate if Silverman was out of the picture, as defendants did not want any further dealings with him. This resulted in an assignment of the lease by Silverman to Miller on January 29, 1937, who went into immediate possession and paid the rent until March 2, 1937, when he, in turn, assigned all of his right, title and interest in the lease to Charles H. Penikoff. The latter operated the theatre from that time, under the New Valencia Theatre Corporation, until May 1, 1937, when the name of the corporation was changed to The Waukegan Times Theatre Corporation, appellee. The rent was paid by the New Valencia Theatre Corporation to Schwartz and Company until May 4, 1937, when Mr. Penikoff assigned his interest in the lease to appellee, and the latter continued in possession and paid the rent thereafter. Mr. Penikoff testified that he told Mr. Schwartz of the assignment to him and that it would remain in his name until he was certain how he was going to operate and that

later it would be assigned to the new corporation.

In February 1937, Nellie Conrad obtained a judgment against Silver Illinois Theatres Corporation for $1,611.40 on account of its purchase of the carpet which was in the dance hall at the time the Silverman lease was made, and which was still there at the time of the hearing in this cause. The testimony indicates that shortly before the lease was assigned to Mr. Penikoff Mr. Schwartz told him of the unpaid fuel oil bill, the judgment, and a small item due a painting contractor, and said that Mrs. Conrad would probably not be interested in withdrawing the cancellation of the lease unless these items were paid, and that Mr. Penikoff agreed to pay them. Mr. Schwartz testified that Mr. Penikoff and Mr. Miller said that the proceeds of Mr. Penikoff's deal would be set aside in such a way that all bills would be taken care of before any money was turned over to Mr. Silverman. Mr. Penikoff testified that he did not remember making the statement. He also testified that he asked Mr. Schwartz if the latter could grant consent to the assignment of the lease, and that Mr. Schwartz told him not to worry about it, to go ahead, and that it would be all right and that it would all be taken care of. Mr. Schwartz testified that he told Mr. Penikoff that he was sure he could get the consent of the owners of the property to the assignment, provided the defaults were cured, including the judgment. Apparently upon the advice of Mr. Penikoff's attorney, early in May 1937, that it was not necessary to get consent in writing, he did not procure a written consent to the assignment, and no written consent to any of the assignments was ever obtained, but Schwartz and Company had knowledge of each of them at the time or shortly after each of them was made. They accepted the rent each month from the various assignees until the month of December 1938, rendered statements of the amounts due for fuel oil, and took care of the transferring of the insurance to each of the

assignees in policies under their control. Nothing was ever paid on the judgment. On September 20, 1937, Mr. Penikoff as president of appellee, wrote Schwartz and Company, agreeing to pay the old oil bill of $1,591.32, by paying $91.32 on that day and $100 per month thereafter. $91.32 was paid thereon in September 1937, and subsequent payments reduced the original amount to $1,000. Some of the current oil bills were paid, some were unpaid, and Mr. Schwartz testified there was still $1,000 unpaid on the original bill, and that the total amount due for oil at the time he testified was $1,988.65, allowing a credit of $400 for interest on a deposit of $5,000 advanced by the lessee under the terms of the lease, and that credit was given annually for such interest against the amount due for oil.

The testimony shows that during the time the theatre was operated by the original lessee and his successor-assignees, large amounts were spent for advertising, and that Mr. Penikoff bought the business from Silverman at the price of $30,000; that, with the knowledge and approval of the agent, he spent approximately $20,000 in remodeling and improvements; that at the same time, the agent spent $170 for work on the outside; and that appellee's assets in the theatre are worth close to $34,000.

Mr. Silverman was adjudged a bankrupt on September 8, 1938 and his obligation under the lease was thereby cancelled. Notice of the adjudication was received by Schwartz and Company on September 10, 1938, and was turned over to Mrs. Conrad's attorney. On September 15, 1938, appellee paid the rent for September to Schwartz and Company and it was accepted. On September 19, 1938, Mrs. Conrad's attorney wrote Mr. Penikoff advising him of the receipt of the notice of Silverman's bankruptcy, the provision of the lease for cancellation in such event, and that the lease would be cancelled unless the Conrad judgment be satisfied,

the past due oil bill be paid, and the existing lease be placed in a satisfactory condition so that the agent might know with whom he was dealing. Under the Schwartz agency's knowledge of the assignments, their transfers of the insurance, and receipt of the rent it is difficult to understand how they did not know with whom they were dealing. On October 13, 1938, an agreement was entered into between Mr. Schwartz and Mr. Bernstein, who succeeded Mr. Penikoff as president of appellee corporation, that the rent would be accepted thereafter without prejudice to the right to cancel the lease. A notice to that effect from Schwartz and Company was received by Mr. Bernstein on October 17. The rent for October was paid, and the rent for November was paid on November 15. On November 14, 1938, a notice of termination of the lease, dated November 12, 1938, signed by Nellie Conrad, addressed to Silverman, appellee, and others, was received by appellee. The only cause of termination stated in the notice was the bankruptcy of Silverman and the provision of the lease in respect thereto. The rent for December 1938, was tendered and refused. The suit for forcible entry and detainer was begun shortly thereafter, followed by the suit at bar. The rent for December 1938, and thereafter, was deposited with the clerk of the court, until $9,700 was in his hands. On December 2, 1939, upon appellants' petition, and over objection of appellee, the court ordered the amount on hand to be turned over to Schwartz and Company, without prejudice to the rights of any of the parties, to be credited to appellee on the final accounting, on account of its occupance of the premises. On March 25, 1940, appellee filed its motion for leave to file a supplemental complaint showing such payment, and subsequent payments by the clerk to the Schwartz agency of the rent for January and February 1940 alleging that by reason of the acceptance of such rent Nellie Conrad has no right to maintain the forcible en-

try and detainer action, and that the instant litigation should be terminated immediately in appellee's favor. The motion was denied and cross-error is assigned on the ruling.

The court construed the ninth paragraph of the lease as meaning that the lessee is liable to and should pay one half the cost of the fuel furnished to the heating plant used to heat the demised premises, and is not liable to pay for any portion of the fuel furnished to the heating plant to supply heat or hot water to heat the so-called Pantheon Building, its stores, apartments and offices, or any other building except the theatre premises, and ordered the cause re-referred to a special commissioner to state the amount due from appellee, and to give effect to the testimony of an engineer who testified on that subject, retaining jurisdiction to pass upon the account, and for fixing commissioner's fees and costs.

We first consider whether the lease was in effect between the appellants and appellee, and in approaching this subject we must take notice of the long-established principle of law that forfeitures are not favored by the courts and they will readily adopt any circumstances that indicate an intent to waive a forfeiture. (*Patterson v. Northern Trust Co.*, 132 Ill. App. 208, 220; *Famous Permanent Wave Shops, Inc. v. Smith*, 302 Ill. App. 178, 190.) That covenants against assignments will be strictly construed in order to prevent forfeitures, is an elementary proposition of law. (*Traders Safety Bldg. Corp. v. Shirk*, 237 Ill. App. 1.) Although appellants knew of the several assignments of the lease, they at no time gave any notice to appellee or to any of the predecessor assignees of any termination of the lease for a failure to procure consent in writing to any such assignment, but treated the lease as in effect, and continued without objection to accept the rent from each of them, upwards of a year and two thirds after the first assignment, and

also the payments on the fuel oil above mentioned, until October 1938. As was said in *Webster v. Nichols,* 104 Ill. 160, 171; "The clause in the lease providing that the premises shall not be assigned without the written consent of the lessors, is clearly for the benefit of the lessors only. It does not render the assignment, when otherwise made, absolutely void, but voidable only, at the option of the lessors or their representatives. But even if the lessors, instead of here attempting, as they now are, to enforce rights under an assignment otherwise made, were attempting to have such an assignment declared void, they could not succeed. They have knowingly accepted rent from Abiah G. Webster since she has been in possession as purchaser from Gage, and this concludes them, for it is well settled that 'any act done by a landlord knowing of a cause of forfeiture by his tenant, affirming the existence of the lease, and recognizing the lessee as his tenant, is a waiver of such forfeiture. . . . The receipt of rent subsequently accruing from the tenant by the landlord is such an act, and the forfeiture thereby waived.'" This well-recognized rule has its foundation, at least in part, upon the fundamental rule, that one having the exclusive right to terminate an executory contract, must abrogate it altogether, if at all. He cannot be heard to say it is valid for one purpose, and, in the same breath, that it is invalid for all other purposes, but is founded chiefly upon the principle of common honesty and natural justice, which the law exacts of mankind in their intercourse and dealings with each other. (*Schimp* v. *Cedar Rapids Ins. Co.,* 124 Ill. 354, 357.) In the case at bar, as in *Webster v. Nichols, supra,* appellants are attempting to enforce rights under an assignment, by seeking to recover for the unpaid fuel oil bill, under the terms of the lease, and in addition to accepting the rent from the several assignees, including appellee, they accepted rent from appellee, without protest or condi-

tion, for the month of September 1938, after they had notice of the bankruptcy of Silverman. Under the doctrine laid down in *Webster v. Nichols, supra,* this was also a waiver of forfeiture on account of such bankruptcy. Although the lease contains a clause that the acceptance of rent after it falls due, ''or after having knowledge of any breach hereof by lessee, or the giving or making of any notice or demand, whether according to any statutory provision or not, or any act or series of acts except an express written waiver,' shall not be construed as a waiver of lessor's right to act without notice or demand or of any other right hereby given lessor, or as an election not to proceed under the provisions of this lease,'' such a clause is for the benefit of the lessor, and has no force as to waivers implied by law from conduct of the lessor amounting to an estoppel, and does not render an oral waiver inoperative, since such a provision may itself be waived. (*Bennett v. Union Cent. Life Ins. Co.,* 203 Ill. 439, 450; *Phenix Ins. Co. v. Grove,* 215 Ill. 299, 302; *Reinhardt v. Security Ins. Co. of New Haven, Conn.,* 312 Ill. App. 1, 12.) A condition once waived is forever gone. (*Continental Life Ins. Co. v. Rogers,* 119 Ill. 474, 487; *Sheldon v. Dunbar,* 200 Ill. 490, 493.)

*In re Scholtz-Mutual Drug Co.,* 298 Fed. 539, is cited and relied upon by appellants, as holding that such a covenant is a valid restriction. In that case bankruptcy proceedings were instituted against a lessee, and the assignee of the lessor filed a petition in the bankruptcy proceedings asking for possession of the premises because a receiver had been appointed for the lessee in possession of the premises. The lease contained a provision similar to the cancellation clause in the case at bar. The court held it was within the power of the parties to so contract, but there is no question here about the validity of such a provision, and that case is not in point.

In *Empress Theatre Co. v. Horton,* 266 Fed. 657, also cited and relied upon by appellants, the lease provided: "The bankruptcy or insolvency of the party of the second part (the lessee), or *other tenants who may go into possession of the premises,* with the written consent of the party of the first part, shall, at the option of the party of the first part, work an immediate forfeiture of the lease." The cause involved the bankruptcy of the assignee of the lessee, the tenant in possession, and manifestly is not applicable here.

*In re Lindy-Friedman Clothing Co., Inc.,* 275 Fed. 453, also cited and relied upon by appellants, the corporation assignee of the lessees went bankrupt. The lease contained a clause similar to the bankruptcy clause of the lease in the case at bar. The lease named two individuals as lessees, and it was contended that the clause applied only to them. The court said that the contention was too narrow because it did not accord with the contemplation of the parties to the lease, and further said: "It is not to be doubted that the organization of the corporation, now the bankrupt, was contemplated, for the lease itself shows such to be the fact," and further held that it was intended by both parties that the corporation should step into the shoes of the original lessees, and become as fully bound in every respect. No such factual situation exists here, and that case is manifestly not in point. In *In re Lindy-Friedman Clothing Co., Inc.,* 285 Fed. 22, the facts are similar to those in the *Lindy-Friedman Company* case, above mentioned, and is in the same category, as is also *In re Famous Fain Co., Inc.,* 13 F. (2d) 529, cited by appellants, where the determinative facts and issues were analogous to those in the *Friedman Company* cases.

Appellants claim that the phrase: "If lessee, or any one or more of the lessees, if there be more than one," in the termination clause relating to bankruptcy, clearly shows an intention to extend the

provisions to the rights of appellee, and cite *Gillette Bros. v. Aristocrat Restaurant,* 239 N. Y. 87, 145 N. E. 748, which was a suit by the plaintiff corporation against the defendant restaurant for rent. The Schulte Realty Company had leased the premises to Maurice and Charles Gillette, as copartners, described therein as "the tenant," and they assigned the lease to the plaintiff corporation without consent of the lessor, and the plaintiff in turn executed an instrument, in form a sublease, but which the court held was an assignment, for the entire term, to the defendant. Receivers for the plaintiff were appointed and a petition in involuntary bankruptcy was filed against it, whereupon the lessor served notice of the termination of the lease upon the Gillettes, the plaintiff, and the defendant. Upon receiving the notice, the defendant voluntarily vacated the premises. The bankruptcy suit and the equity suit in which receivers were appointed having been dismissed, the suit for rent was instituted by the plaintiff. The defendant took the position that because of the bankruptcy of an intermediate assignee, it was obliged to treat the lease as terminated and to vacate the premises. The court held that there was no privity of contract between the corporation assignee and the lessor, but only privity of estate; that it was bound by such covenants as ran with the land so long as it remained as assignee of the lease and in possession, but might discharge itself from further liability by assigning its interest in the premises to a stranger; and that the final assignee was liable on the ground that it was never intended that an intermediate assignee, who had reassigned, and whose liability of every kind to the lessor had ceased, should be described by the word "tenant," or that bankruptcy of such a third party should result in a forfeiture of the lease. That case does not support the contention of appellants. The same holding as to privity in such cases is found in *Leitch v. New York Cent. R. Co.,* 388 Ill. 236,

242, but no question of waiver was involved in that case or the *Gillette* case, *supra*.

Appellants claim that, under the doctrine of those two cases, appellee could have abandoned the premises at any time before this suit was instituted, without liability for future rent. The 18th paragraph of the lease provides: "All covenants, promises, representations and agreements herein contained shall be binding upon, apply and inure to the benefit of the heirs, executors, administrators or assigns respectively of Lessor and Lessee." We think there can be no doubt that the word "assigns" includes successive assigns. If there be any such doubt it is resolved against the lessor (*Goldberg v. Pearl,* 306 Ill. 436) and it follows that appellee, as assignee, is bound by the obligations of the lessee. Furthermore, even if this conclusion is not correct, appellee has evinced no intention to abandon the premises, or to escape liability under any of the provisions of the lease, but, on the contrary, by its complaint in this cause states that it "is ready, willing and able to comply in all respects with the terms and provisions contained in the lease, and has tendered to the defendants the rents which has become due, but defendants refused to accept said rent; and plaintiff does hereby tender and offer to pay any such rent and any charges legally due from it under the terms and provisions of said lease." The statement that it is willing, ready and able to comply in all respects with the terms and provisions of the lease manifestly includes payment of the stipulated rent for the full term, when and as the same becomes due, and for its portion of the fuel oil already used and to be used during the remainder of the term. Appellee thus assumed the obligations of the original lessee under the lease, and there is no showing that it is not ready, willing, and able to carry out and perform them. Under the decree granting the relief sought on those grounds, it could not escape lia-

bility for its obligations thereunder by abandoning the premises before the expiration of the lease. Appellants are in no worse position than if written consent to the assignments had been obtained, or if the bankruptcy of Silverman had not occurred. Under the circumstances, we do not think that the doctrine that there is no privity of contract between the lessor and an assignee of a lease without consent is a controlling factor in this case.

A case directly in point is *Smith v. Gronow*, 2 Law Rep., Queen's Bench, 394, 65 Law Times Rep. (N. S.) 117, where a lessor sued the assignee of the lease to recover possession on account of the bankruptcy of the lessee. The lease contained a covenant against assignment thereof without written consent of the lessor, and a provision that if the lessee, his executors, administrators, or assigns, shall become bankrupt or take the benefit of the act for the relief of insolvent debtors, the lessor could re-enter, and the lease be terminated. The bankruptcy, as in the instant case, took place after the assignment of the lease, and the court held that the provision referred only to the bankruptcy of the person holding the estate, that is to the bankruptcy of the lessee, his executors or administrators if there had been no assignment, or if there was an assignment, then to the bankruptcy of the assignee. That case is cited with approval in *Gillette Bros. v. Aristocrat Restaurant*, 209 N. Y. App. Div. 597.

As to the meaning of the phrase above quoted, the rule of law is that leases are most strongly construed against the lessor, and if there is any doubt or uncertainty as to the meaning of the grant, it is to be construed in favor of the lessee. We think the master correctly interpreted it in his holding that the parties to the lease knew that the lessee, Manning Silverman, was a sole individual, and by no stretch of the imagination could he be more than an individual or the plural applied to him; that the lessors, when they

adopted this phrase, contemplated that the lease, if assigned, might be to one or more persons. It is evident that such assignee or assignees were meant to be embraced in the term "or any one or more of the lessees, if there be more than one"; and in line with the *Gronow* case, *supra,* we think that the provision as to bankruptcy refers to Silverman, if he was still the lessee, and, in the alternative, to the assignee or assignees if they be the tenant. The doctrine that any doubt or uncertainty as to the meaning of a provision in a lease is construed most strongly against the lessor, applies equally here. In this connection, it is to be remembered that Silverman was forced out of the picture, and appellee was welcomed as successor, by appellants, and it would be highly inequitable to impose upon appellee, a forfeiture of its rights thereunder, with resulting great financial loss, when appellee is ready, willing and able to carry out and perform all the terms of the lease, with no loss to appellants.

In a later case, *In re Larkey,* and *In re Konner,* 214 Fed. 867, a lease contained a cancellation clause similar to that in the case at bar. There was a subletting with consent of the lessor, and the sublease contained the same provision. An involuntary proceeding in bankruptcy was instituted against the lessee, and a receiver was appointed. Almost immediately thereafter the lessor filed an intervening petition, expressing an election to re-enter, and prayed for an order requiring the alleged bankrupt and the sublessee to surrender the premises. In denying the petition, the court said that it was clear from the evidence that the landlords knew before they consented to the sublease, who the subtenant was to be, and that they approved of him and of the purpose for which he was to use the premises. Mentioning the two grounds of the petition (1) that proceedings in bankruptcy had been instituted, and (2) a receiver had been appointed, having in mind the prin-

ciples that forfeitures are not favored either at law or in equity, and that a provision therefor will be strictly construed in favor of the tenant, the court held that there had been no breach of the covenant in either of those respects which worked a forfeiture, and denied the petition on two grounds, the first of which was that the proceeding had not yet culminated in an adjudication of bankruptcy; and, on the merits, that the enforcement of the forfeiture would cast an undue hardship on the assignee, who was acceptable to them; that the lessors were in exactly the same position as if there had been no breach, and that there was no question of the subtenant's financial responsibility. The court said the only conceivable benefit which a forfeiture would confer upon the landlords was that they might, if relieved of the present tenants, be able to lease the premises at a larger rental, a consideration which should not commend itself to a court of equity. The holding on the merits precisely fits the circumstances in the case at bar. The chancellor correctly held that the lease is in effect between appellants and appellee, and correctly made the injunction permanent. This eliminates any necessity of passing upon the sufficiency of the notice of termination.

*Grommes v. St. Paul Trust Co.,* 147 Ill. 634; *Jaeger v. United States Brewing Co.,* 163 Ill. App. 216; and *Halloran v. Hall,* 165 Ill. App. 440, further cited and relied upon by appellants, involve the liability of an original lessee for rents after assigning his lease, and have no bearing on the issues in this case.

This leaves for consideration the question of the court's holding as to the proper division of the cost of fuel oil. Mr. Schwartz testified that when the terms of the lease were being discussed it was said that the tenant would have to pay for his share of the fuel, and the question arose as to what that share might be; that the actual amount of space to be heated

in the theatre proper, and in the other parts of the building was not computed, and it was impossible to arrive at any figure, or definite basis, and it was agreed that the lessee and the lessor, should each pay one half of the oil bills. His testimony was not contradicted, unless it be by the terms of the lease itself, which we do not think does so. It is to be remembered that the parties themselves treated the provision in accord with Mr. Schwartz' testimony. Where construction of a lease is doubtful, the practical construction by the parties may be resorted to. (*United States Brewing Co. v. Wolf,* 181 Ill. App. 509.) Appellee wrote a letter to him agreeing to pay the amount unpaid at that time on that basis, and made some payments thereunder, and it was not until this suit was started that appellee claimed the clause in the lease should be interpreted differently. We are of the opinion that under the wording of the lease and the testimony of Mr. Schwartz, appellee is liable for the fuel oil bills as rendered. The decree makes no finding as to the Conrad judgment, and we are not concerned therewith.

As to the cross-error on the denial of leave to file the supplemental complaint, the rents deposited with the clerk were ordered turned over to appellants' agent without prejudice to the rights of any of the parties, to be credited to appellee on the final accounting, on account of its occupancy of the premises. The money would be the property of appellants in any event, because of such occupancy, regardless of the outcome of the suit and there was no error in denying leave to file the supplemental petition.

The decree is affirmed in all respects except as to the holding on the amounts for fuel oil for which appellee is liable, and as to that holding the decree is reversed and the cause is remanded, with directions to modify the decree in this respect in accordance with the views herein expressed.

*Reversed in part and remanded.*