DWAYNE McGILL *et al.*, Plaintiffs-Appellees, v. WIRE SALES COMPANY, Defendant-Appellant.

First District (4th Division)   Nos. 87—3594, 88—0409 cons.

Opinion filed September 8, 1988.

Baker & McKenzie, of Chicago (George B. Beall, of counsel), for appellant.

Matthias A. Lydon, of Lydon & Griffin, of Chicago (Steve C. Silvey, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Dwayne and Thomas McGill, are lessees under a lease with defendant, the Wire Sales Company, the lessor. Plaintiffs brought an action in the circuit court of Cook County against defendant. Plaintiffs sought the specific performance of a lease provision granting them the option to buy the leased property. The trial court granted plaintiffs' motion for summary judgment and denied that of defendant on the issue of specific performance. Defendant appeals, contending that the trial court erred in granting summary judgment for plaintiffs.

We affirm the judgment of the trial court.

BACKGROUND

The record contains the following undisputed facts. On August 30, 1983, plaintiffs and defendant signed a standard form lease for residential property located at 5433 South Keating Avenue, in Chicago, Illinois. The term of the lease was from November 1, 1983, through November 1, 1986, with the rent set at $250 per month. The lease required plaintiffs to maintain the premises in compliance with all local ordinances. The lease granted defendant the right to terminate the agreement at any time without notice, upon default by plaintiffs in either the payment of rent or under any other covenant. The lease provided that if fire or other disaster rendered the premises untenantable, defendant had the option to either terminate the lease, or to re-

pair the premises within 30 days. If defendant failed to repair the premises within 30 days, or fire destroyed the premises, the lease automatically ended.

The parties attached a "rider" to the lease agreement. Through the rider, the lease further required plaintiffs to keep the premises insured against fire and other risks. Additionally, if plaintiffs were not in default of any lease provision, the lease granted plaintiffs the option to purchase the premises, at any time during the term of the lease, on the conditions set forth in an attached real estate contract.

A fire occurred on or about June 12, 1985. The house was damaged substantially, rendering it untenantable. The record further shows that on June 13, 1985, Fred J. Schaeflein, an officer of defendant, learned of the fire. Schaeflein called Wayne McGill, who is plaintiffs' father and who acted on their behalf. McGill told Schaeflein that plaintiffs had insurance covering the fire loss. McGill subsequently filed a claim with the insurance company.

Plaintiffs did not pay any rent during the months of July, August, September, October and November. In early October 1985, Schaeflein received a citation from the Department of Inspectional Services of the City of Chicago. Defendant was charged with violating several municipal ordinances. Schaeflein immediately telephoned McGill and informed him of the citation and the alleged violations. McGill told Schaeflein that he would take care of the problem. McGill received a copy of the citation that day.

On November 6, 1985, defendant was served with a complaint in City of Chicago v. Wire Sales Co., No. 85—M1—406441. The complaint charged defendant with violating the same municipal ordinances alleged in the citation from the department of inspectional services. On November 11, 1985, Schaeflein and defendant's attorney met with McGill. It is unclear from the record exactly what occurred at this meeting. It is undisputed, however, that the parties did not agree on a solution.

On November 15, 1985, defendant notified plaintiffs by letter that it had elected to terminate the lease, effective immediately. Defendant declared a forfeiture based on plaintiffs' default under two lease provisions: (1) plaintiffs paid no rent for July through November, and (2) plaintiffs failed to maintain the premises in compliance with local ordinances. Defendant demanded that plaintiffs immediately vacate the premises.

On or about December 6, 1985, plaintiffs delivered to defendant a money order in the amount of $1,250 for the unpaid rent for July through November. Also at that time, plaintiffs notified defendant

that they intended to exercise the option under the lease to buy the premises. In a letter dated December 9, 1985, defendant informed plaintiffs that they could not exercise the lease's purchase option since defendant terminated the lease on November 15. Defendant also cashed the money order and retained the proceeds therefrom, but refunded $125 to plaintiffs, which represented rent from November 16 through November 30.

Plaintiffs filed their complaint seeking specific performance on December 13, 1985. Defendant subsequently brought a forcible entry and detainer action against plaintiffs, which was consolidated into the specific performance action. On cross-motions for summary judgment, the trial court, on November 2, 1987, granted summary judgment for plaintiffs on the issue of specific performance. Defendant appeals from the trial court's grant of summary judgment for plaintiffs on the issue of specific performance.

OPINION

■ In reviewing a trial court's order of summary judgment, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) Summary judgment is the proper remedy where, as in the case at bar, only the construction and legal effect of a lease are at issue. *Ohio Oil Co. v. Yacktman* (1976), 36 Ill. App. 3d 255, 261, 343 N.E.2d 544, 549.

■ It is well settled that the law does not favor forfeitures. Further, courts will readily adopt any circumstances that indicate an intent to waive a forfeiture. Accordingly, any act of a landlord that affirms the existence of a lease and recognizes a tenant as his lessee, after the landlord had knowledge of a breach of the lease, results in the landlord waiving his right to a forfeiture of the lease. *Housing Authority for La Salle County v. Little* (1978), 64 Ill. App. 3d 149, 150, 380 N.E.2d 1201, 1202; 24 Ill. L. & Prac. *Landlord & Tenant* §§239 through 240 (1980).

The rationale of this rule is simply that one who holds the exclusive right to terminate an executory contract must do so *in toto*, or not at all. That person cannot be heard to say that a lease is valid for one purpose and, in the same breath, say that the lease is invalid for all other purposes. The rule is based on the principles of common honesty and natural justice, which the law requires of persons in their business dealings with each other. *Waukegan Times Theatre Corp. v.*

*Conrad* (1945), 324 Ill. App. 622, 632, 59 N.E.2d 308, 312.

■■ Applying this principle to the case at bar, we conclude that the trial court's grant of summary judgment for plaintiffs on the issue of specific performance was clearly proper. Defendant first points to the lease provision that automatically terminates the lease if either fire destroys the premises or merely renders the premises untenantable and the landlord does not repair it within 30 days. Defendant contends that the lease expired on the date of the fire, June 12, 1985. We also note defendant's alternate contention, that the lease ended when defendant terminated it on November 15, 1985, based on plaintiffs' late payment of rent for the months of July through November. Defendant argues that, consequently, plaintiffs could not exercise the lease's purchase option on December 6, 1985, since the lease no longer existed by that date.

We reject defendant's arguments. Defendant kept the back rent which plaintiffs tendered, less a small refund representing the period following the lease's termination. It is well-settled that a landlord's acceptance of rent accruing after a breach, which is known to the landlord, is an act that results in the landlord waiving his right to a forfeiture. (*Waukegan Times Theatre Corp. v. Conrad* (1945), 324 Ill. App. 622, 632, 59 N.E.2d 308, 312.) Since defendant accepted the back rent under the lease, it cannot now be heard to argue that either the lease terminated due to the fire or that plaintiffs breached the lease by their late payment of rent.

Defendant, however, points to the lease, which entitles it to back rent even after it terminates the lease or receives a judgment for possession. Relying on these lease provisions, defendant argues that its acceptance of the back rent did not constitute a waiver of plaintiffs' breach. We disagree. Such lease provisions are for the benefit of the lessor; they have no force as to waivers implied by law from the lessor's conduct amounting to an estoppel. Such lease provisions do not render an unwritten waiver inoperative, since such provisions themselves may be waived. 324 Ill. App. at 633, 59 N.E.2d at 312.

■■ Defendant next points to the lease provision that requires plaintiffs to maintain the premises in compliance with local ordinances. Defendant contends that the lease ended when it terminated the lease on November 15, 1985, based on plaintiffs' breach of this provision. Defendant argues that, consequently, plaintiffs could not exercise the lease's purchase option on December 6, 1985, since the lease no longer existed by that date.

We reject defendant's argument. It is well settled that where the landlord's conduct has led the tenant to believe that the landlord will

not insist on strict compliance with the terms of the lease, a court will not permit forfeiture of the tenant's rights because of his failure to comply strictly with the lease's terms, unless the landlord has notified the tenant that he intends to hold the tenant strictly to the lease's provisions in the future. *Steven W. Barrick & Associates v. Witz* (1986), 147 Ill. App. 3d 615, 620, 498 N.E.2d 738, 742.

■ Applying this principle to the instant case, we conclude that defendant, by its conduct, is estopped from holding plaintiffs strictly to the lease provisions requiring compliance with local ordinances. The record shows that defendant received the city citation in early October 1985. Instead of declaring a default, defendant referred the matter to plaintiffs, who said they would take care of the problem. On November 6, 1985, defendant was served with a complaint, charging defendant with violating the same municipal ordinances alleged in the city citation. Again, instead of immediately declaring a default, defendant chose to meet with plaintiffs. The meeting, unfortunately, produced no solution.

Although plaintiffs breached the lease, defendant repeatedly affirmed the existence of the lease and recognized plaintiffs as its tenants. The record shows that defendant's conduct led plaintiffs to believe that defendant would not hold them strictly to the lease. If defendant decided to hold plaintiffs strictly to the lease, defendant should have notified plaintiffs that it would do so in the future. Since defendant was estopped from terminating the lease on November 15, 1985, the lease still existed on December 6, 1985, when plaintiffs exercised the lease's purchase option. We uphold the trial court's grant of summary judgment for plaintiffs on the issue of specific performance.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.